**Jean FALLIS, et al.,**
**Plaintiffs-Appellants,**

v.

**Gordon M. AMBACH, et al.,**
**Defendants-Appellees.**

**No. 872, Docket 82–7877.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1983.

Decided June 10, 1983.

Maurie G. Heins, Horn, Heins, Finkelstein & Pezzulo, Syracuse, N.Y., for plaintiffs-appellants.

Wayne L. Benjamin, Asst. Atty. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen., State of N.Y., William J. Kogan, Asst. Sol. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Before TIMBERS, NEWMAN and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

## I. BACKGROUND

Appellants are autistic children, their parents, and Jowonio: The Learning Place (Jowonio), which is the school the appellant children attend. Appellees are certain New York State departments and officials responsible for education and budget matters.[1] The present dispute concerns the rate, set by the State, at which the local school districts reimburse Jowonio for providing appellant children with a free, appropriate, public education, pursuant to the Education for All Handicapped Children Act (EHA), 20 U.S.C. §§ 1401–1420 (1976 & Supp. V 1981).

Jowonio is a private school for both typical (non-handicapped) and non-typical (handicapped) children four to eight years of age. The school enrolls approximately 60 students, of whom about 20 non-typical children are integrated with the others. The tuition of the typical children is paid by their parents and ranges from $20.00 (scholarship rate) to $40.00 (full tuition) per week. Non-typical children's tuition is paid by their local school districts upon placement at Jowonio by their local Committees on the Handicapped (COH).[2] *See generally* EHA, 20 U.S.C. §§ 1411–1420.

---

1. Appellees are Gordan M. Ambach, Commissioner of Education of the State of New York; the New York State Department of Education; Louis Grumet, Assistant Commissioner for the Education of Children with Handicapping Conditions; C. Mark Lawton, (former) Director of the Division of the Budget of the State of New York; and the New York State Division of the Budget.

2. The EHA provides for federal financial assistance to aid state and local agencies in educating handicapped children. This funding is conditioned on the States' compliance with the EHA's goals and procedures. New York State participates in this fiscal incentive program. *See* N.Y.Educ.Law §§ 4401–4409 (McKinney 1981 & West Supp.1982–83).

The State Department of Education is charged with the responsibility of "us[ing] all means and measures necessary to adequately meet the physical and educational needs of" handicapped children in New York State. N.Y.Educ.Law § 4403(1) (McKinney 1981). With respect to handicapped children who are placed in private schools by their local COH, the Commissioner of Education (Commissioner) annually recommends to the Division of the Budget the allowable tuition rate at which the private schools will be reimbursed by the State for the cost of educating the handicapped children placed in such schools. *See id.* §§ 4401(5), 4405(3)(d). The rate is not effective until approved by the Director of the New York State Division of the Budget. *Id.* § 4405(3)(d)(ii).

Pursuant to these provisions, the tuition reimbursement rates at Jowonio for the academic years 1978–79 and 1979–80 [3] were $2,847 and $6,083,[4] respectively, based on budgetary information submitted to the State by the school. In August, 1980, Jowonio was notified by the office of the Assistant Commissioner for Education of Children with Handicapping Conditions (Assistant Commissioner) that the recommended rate for 1980–81 would be $7,788 per child, subject to adjustment after a field audit.

Prior to the 1980–81 academic year, the reimbursement rate was set based on unaudited budgetary information submitted by each school. For 1980–81, however, there was a change in the manner in which the rate was set. Rather than rely solely on budgetary information submitted by each school, the State Department of Education began calculating the rate based on certified financial statements submitted by the school at the end of the academic year. After a desk audit of Jowonio's 1979–80 financial statement, Jowonio was informed by the office of the Assistant Commissioner, in a letter dated July 31, 1981, that the

approved tuition rate for 1981–82 would be $2,260, subject to a field audit. Dr. Barnes, Director of Jowonio, filed a formal appeal with the Assistant Commissioner, requesting a tuition rate of $8,145 per child for 1981–82. In response to that appeal, the recommended rate was adjusted to $6,294 per child. Dr. Barnes requested a meeting to discuss the amended 1981–82 rate of $6,294. Before the meeting took place, however, Jowonio was notified by letter from the Assistant Commissioner's office that several issues had to be resolved before the 1981–82 rate adjustment could be recommended to the State Division of the Budget. Among the items questioned were the low fees charged to parents of typical students; that Jowonio appeared to be operating as a private school for typical students with some non-typical students enrolled, indicating that a more equal sharing of costs should be in effect; and that the school was still billing school districts at the 1980–81 rate ($7,788) even though the then current certified tuition rate was $2,260. In addition, the letter questioned the school's distinction, for budget purposes, between staff assigned to non-typical and typical students. Because the classes are intermingled, it was observed that a sharing of teacher services was the likely result. Therefore, the school's suggested allocation for instructional staff was not considered justifiable unless a complete separation of classes took place.

The subsequent meeting between representatives of Jowonio and the State Department of Education resulted in the scheduling of a field audit by two representatives of the State Department of Education, covering the academic years 1979–80 and 1980–81. The July 1982 audit resulted in a draft report prepared by the visiting Education Department staff members who had conducted the audit. Their recommendations included the following: tuition reimbursement rates of $2,630 and $2,887 for the

---

**3.** Jowonio was first approved in 1979 by the Commissioner to provide private non-residential services or programs for children with handicapping conditions. *See* N.Y.Educ.Law § 4401.

**4.** The differential is explained, in part, by the fact that in 1978–79, Jowonio was the recipient of federal grant funds.

academic years 1980–81 and 1981–82, respectively, based on total allowable expenditures divided by total full-time enrollment; required reimbursement to the school districts and counties for overpayments in 1980–81 and 1981–82, totalling some $165,000; and establishment of methods for allocation of costs between the typical and non-typical programs to assure proper accountability in the future. By letter dated August 31, 1982, the office of the Assistant Commissioner informed Dr. Barnes that it had adopted the staff recommendations, adding that the recommended tuition rate for 1982–83 would be $2,992. Shortly thereafter, by letter dated October 15, 1982, Jowonio was notified that the Division of the Budget had approved a rate of $2,628 for the 1982–83 academic year.

In response to this last notification, on October 27, 1982, appellants filed this action in the United States District Court for the Northern District of New York. Appellants (parents and children) claimed, in short, that the tuition reimbursement rate set by the State was so low as to violate their right to a free and appropriate education under EHA and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. V 1981).[5] Moreover, they claimed that the recommended rate would result in the financial collapse of the school, effectively causing a transfer of the non-typical children out of Jowonio. Such a transfer, in their view, would constitute a change in placement, triggering the notice and hearing provisions of EHA, 20 U.S.C. § 1415. Finally, they claimed the appellees' actions were in derogation of their federal constitutional due process and equal protection rights and the right of the children to be educated in the least restrictive environment. Appellant Jowonio argued that the State's rate-setting methodology violates its due process and equal protection rights. Appellants sought a temporary restraining order and preliminary and permanent injunctive relief enjoining appellees from (1) reducing the 1982–83 tuition rate below $7,788; (2) requiring reimbursement by Jo-

wonio for alleged excess tuition rates received by the school for 1980–81 and 1981–82; and (3) directing school districts to collect alleged excess rates for 1980–81 and 1981–82 and to reimburse Jowonio at a rate lower than $7,788 for 1982–83. In addition, appellants requested that the injunction require the State to use a rate-setting methodology appropriate to the integrated (typical and non-typical) environment; that appellees provide a full evidentiary hearing prior to reducing the 1980–81, 1981–82 and 1982–83 rates; and that the $7,788 rate be maintained pending resolution of this case and/or administrative review of appellants' need for program and placement. Finally, appellants requested the court to enjoin appellees from failing to develop appropriate education alternatives for appellant children.

On October 29, 1982, the district court granted a temporary restraining order directing appellees not to reduce appellants' tuition reimbursement rate for 1982–83 below $7,788 per handicapped child and restraining appellees from requiring Jowonio to reimburse school districts for the alleged excess tuition rates received by the school for the 1980–81 and 1981–82 school years. A hearing on appellants' application for a preliminary injunction was held on November 1–2, 1982. The temporary restraining order was extended until November 18, 1982. On that date, the district judge denied appellants' application for a preliminary injunction. Appellants unsuccessfully attempted to obtain an injunction pending appeal from the district court on November 19, 1982. This court, on December 14, 1982, granted an injunction pending determination on appeal.

In addressing appellants' request for a preliminary injunction, the district judge found that appellants (parents and children) had demonstrated irreparable harm and a balance of hardships tipping decidedly in their favor. See *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). However, he determined that the court lacked subject matter jurisdiction

5. *See* note 7 *infra.*

over their rate-setting claim and that their constitutional and statutory due process claims were premature. Specifically, he concluded:

> [T]he Court lacks jurisdiction to entertain the parents' complaints about the rate of tuition reimbursement to be paid Jowonio and . . . the claims that plaintiffs' Constitutional and statutory due process rights have been violated are premature, as is their claim that their right to have these children educated in the least restrictive environment has been violated.

As to the school, the judge determined that none of the requirements for preliminary injunctive relief had been satisfied. He reasoned that Jowonio's claim was one that can be remedied by damages at law, thus precluding a showing of irreparable harm; that the school failed to establish even a serious question going to the merits; and that there was no showing of denial of due process, either procedural or substantive. In addition, he determined that the school had not made out an equal protection claim since, even if a classification had been shown, there was a rational basis for the requirement that the school document its reimbursement requests as required by the State.

On appeal, the parents and children claim that the district judge erred in determining that the court lacked subject matter jurisdiction, and in concluding that their substantive and procedural claims under the EHA and the Fourteenth Amendment were premature. Appellant Jowonio contends that the court's denial of a preliminary injunction as to it was based on a misapprehension of the preliminary injunction test, to wit, the school objects to the conclusion that Jowonio's harm could be remedied by

damages and that the due process and equal protection claims lacked sufficient merit for preliminary injunctive relief.[6]

■ We are in agreement with the district court's determination that, for purposes of preliminary injunctive relief, appellants' constitutional and statutory claims[7] are premature, since the children's placement has been neither curtailed nor eliminated. For the same reason, we find premature, as did the district judge, the parents' and children's substantive claim, under 20 U.S.C. § 1412(5)(B), that the tuition rate reduction violates the children's right to a free, appropriate, public education in the least restrictive environment.

■ As to Jowonio, the district judge concluded that the school had failed to demonstrate irreparable harm. We are not inclined to disagree with this determination, since, unlike the children, for whom money damages could not compensate for potential deprivation of a free, appropriate, public education pending litigation on the merits, the school arguably could be compensated in damages for any loss of tuition revenues should those funds later be found to have been improperly withheld. *See Stanger v. Ambach,* 501 F.Supp. 1237, 1242–43 (S.D.N.Y.1980). In any event, we find the school's due process and equal protection claims too insubstantial for purposes of preliminary injunctive relief.

■ However, with respect to the court's determination that it lacked subject matter jurisdiction over appellants' (parents and children) claim under the EHA procedural safeguards provision, 20 U.S.C. § 1415, we disagree. We address below the question of jurisdiction and the parents' and children's claim under 20 U.S.C. § 1415.

---

**6.** On appeal, Jowonio reasserts its position that appellees have denied it equal protection and due process by setting the school's tuition reimbursement rate far lower than that set at segregated schools for non-typical children, and by failing to provide a rate sufficient to cover the true costs of educating the non-typical children.

**7.** In addition to their Fourteenth Amendment due process and equal protection claims, appellants contended in the district court that appel-

lees' actions violated their substantive and procedural rights under the EHA, 20 U.S.C. §§ 1401–1420 (1976 & Supp. V 1981); section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. V 1981); the Civil Rights Act of 1871, 42 U.S.C. § 1983 (Supp. V 1981); Article 89 of the New York State Education Law, N.Y. Educ.Law §§ 4401–4409 (McKinney 1981); and regulations promulgated under these federal and state statutes.

## II. DISCUSSION

### A. *Jurisdiction*

The predicate showing in this Circuit for the issuance of a preliminary injunction requires that the movant demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy,* 596 F.2d at 72. The district judge determined that the appellants (parents and children) had made a showing of irreparable harm and had met the balance of hardships test. However, he "was troubled by the question of likelihood of success on the merits or of a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation." He concluded that the injunction should not issue because the court lacked subject matter jurisdiction. Although we too find that appellants did not make a sufficient showing as to the second prong of the test, we do not base that conclusion on lack of jurisdiction. Rather, finding that the district court had jurisdiction pursuant to 28 U.S.C. § 1331 (Supp. V 1981) and 20 U.S.C. § 1415, we conclude that appellants did not demonstrate either likelihood of success on the merits or sufficiently serious questions going to the merits of their section 1415 claim in that they failed to state a claim upon which relief can be granted.

### B. *Failure to State a Claim under 20 U.S.C. § 1415*

According to appellants, appellees' rate-making decisions with respect to Jowonio contravene the procedural safeguards provision of the EHA. Specifically, they assert violation of 20 U.S.C. § 1415, which reads, in pertinent part:

§ 1415. Procedural safeguards

(a) Any State educational agency . . . which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education . . . .

(b)(1) The procedures required by this section shall include, but shall not be limited to—

\*   \*   \*   \*   \*   \*

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency . . . .

Central to appellants' procedural challenge is whether the appellees' decision to reduce tuition reimbursement rates constitutes "any matter relating to . . . the provision of a free appropriate public education" within section 1415(b)(1)(E), thus triggering the notice and hearing requirements. For the reasons stated below, we find that appellants, at this stage, have failed to state a claim under this provision, and thus have not demonstrated likelihood of success on the merits or presented a serious question going to the merits for purposes of preliminary injunctive relief.

Appellants rely principally on two cases: *Stanger v. Ambach,* 501 F.Supp. 1237 (S.D. N.Y.1980) and *Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982). *Stanger* involved a budget dispute between state defendants and a private school for autistic children. An issue in the case was the application by the New York State Department of Education and the New York State Division of the Budget of the "Standards for Activities Reimbursable for State Aid

Purposes" (Standards). Specifically, plaintiffs had objected, in part, to the so-called "Conflict of Interest" Standard that automatically disallowed from the school's budget the salary of the Executive Director of the school because he was a voting member of the school's Board of Directors. The district judge granted a preliminary injunction which, *inter alia,* prohibited application of the Standards pending trial.

Although the district judge in *Stanger* permitted injunctive relief with respect to a dispute over a budget determination, we reject as too broad the language of the court that the setting of tuition reimbursement rates is a "matter relating to . . . the provision of a free appropriate public education." *Stanger,* 501 F.Supp. at 1239. Such a bald interpretation could lead to inordinate and protracted litigation over matters within the ambit of responsibility of the state agencies to which such budgetary decisions are entrusted. *See Battle v. Commonwealth Pennsylvania,* 629 F.2d 269, 278 (3d Cir.1980) ("[T]hese hard decisions of resource allocation, like the determinations of educational policy are best left to the states, in the first instance."), *cert. denied,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *cf. Board of Education v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 3052, 73 L.Ed.2d 690 (1982) ("[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.").

Nor does *Parks v. Pavkovic, supra,* advance appellants' position. In *Parks,* a handicapped child and his parents moved for a preliminary injunction requiring that various state and local agencies pay plaintiff child's outstanding bill at a residential treatment facility where he had been placed, so he would not be discharged prior to trial on the merits of his claim that the agencies had violated the EHA by failing to pay the bill. The motion was granted. The court reasoned that, having placed Parks in the facility pursuant to the EHA, the agencies had an obligation to assume the full cost of that placement, under the EHA and section 504 of the Rehabilitation Act of 1973. Unlike *Parks,* here the State has not

disallowed certain portions of the cost of education and billed the parents, contrary to the EHA, which requires that the education be provided free of charge. *See* 20 U.S.C. §§ 1401(18)(A), 1412(1). Nor does the instant case present a question of immediate discharge of an individual handicapped child (Parks had already received a discharge notice before applying in the district court for a preliminary injunction). Rather, the dispute herein concerns the overall tuition reimbursement rate allowable with respect to an entire school, given the results of desk and field audits.

Moreover, appellants' reliance on *Vander Malle v. Ambach,* 673 F.2d 49 (2d Cir.1982), is similarly misplaced. In that case, the institution at which Bruce Vander Malle had been placed by his local COH was subsequently removed from the list of certified residential facilities. The Vander Malles sought a preliminary injunction to require the State to maintain their son in the decertified institution at which he had been placed, pending transfer to an approved facility. The district court granted the injunction, and this court affirmed that action. The narrow question addressed in *Vander Malle* was "whether the State defendants have an interim obligation to continue Bruce at the Institute until a lawful alternative placement is made." *Id.* at 52. Unlike *Vander Malle,* the instant case does not concern the State's obligation, under 20 U.S.C. § 1415(e)(3), to maintain an individual's COH placement pending selection of an alternative placement. Rather, we are concerned here with the question of whether the State has an obligation to provide a certain funding level to an entire school to keep the school available as the placement for the appellant children. As discussed below, we conclude that Congress did not intend section 1415 to apply so broadly.

A review of the legislative history of section 1415 supports the view that the procedural safeguards were established in an effort to prevent misclassification of individual children, and not to provide a broad avenue for challenging state fiscal decisions. *See* S.Rep. No. 168, 94th Cong., 1st Sess. 26–30, *reprinted in* 1975 U.S.Code

Cong. & Ad.News 1425, 1450–53. This interpretation was applied in *Tilton v. Jefferson County Board of Education,* 705 F.2d 800 (6th Cir.1983). In *Tilton,* plaintiffs were emotionally handicapped children who had received treatment and education at a state-operated facility, Jewel Manor. When the State closed Jewel Manor for budgetary reasons in 1981, plaintiffs sought preliminary injunctive relief to reopen the school or to provide a substantially similar program pending proceedings contesting the State's action. They claimed that closing of the school constituted a change in placement under the EHA, *see* 20 U.S.C. § 1415(b)(1)(C),[8] triggering the automatic status quo provision, section 1415(e)(3).[9] While the court agreed that the closing of Jewel Manor constituted a change in placement under the EHA, it concluded that the district court did not err in refusing to grant the injunction. The court observed that the procedural safeguards provision was established out of a congressional concern for proper classification of children, noting that "nothing in the legislative history or the language of the Act implies a legislative intent to permit interested parties to utilize the automatic injunctive procedure of § 1415(e)(3) to frustrate the fiscal policy of participating states." *Tilton,* 705 F.2d at 804.

We find this reasoning applicable to the instant case. Although the facts differ in various respects, appellants herein, as in *Tilton,* sought an injunction, in part, to compel the State to allocate fiscal resources which, in appellants' view, would ensure the continued viability of a preferred program. In *Tilton,* plaintiffs wished to invoke the status quo provision of section 1415 to require the State to reopen a school already closed or to furnish a substantially similar program pending their appeal. Here, appellants sought to invoke section 1415 in response to a state budgetary decision which had not yet resulted in the closing of the school. We conclude, as did the Sixth Circuit in *Tilton,* that Congress did not intend section 1415 to authorize such wholesale challenges to state fiscal determinations. We therefore reject appellants' contention that they have demonstrated likelihood of success on the merits with respect to their procedural claim under the EHA.[10]

The denial of preliminary injunctive relief is affirmed.[11] The mandate shall issue forthwith.

**8.** 20 U.S.C. § 1415(b)(1)(C) reads:
> (C) [the procedures require] written prior notice to the parents or guardian of the child whenever such agency or unit—
> (i) proposes to initiate or change, or
> (ii) refuses to initiate or change,
> the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

**9.** 20 U.S.C. § 1415(e)(3) reads:
> (3) During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

**10.** *Cf. Concerned Parents & Citizens for The Continuing Education at Malcolm X (PS 79) v. New York City Board of Education,* 629 F.2d

751 (2d Cir.1980) (transfer of students from one school to another with substantially similar program was not a change in placement sufficient to trigger EHA procedural safeguards), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Dima v. Macchiarola,* 513 F.Supp. 565 (E.D.N.Y.1981) (transfer of handicapped students caused by the New York City Board of Education refusal to contract with private school did not constitute change in placement so as to trigger procedural safeguards provision); *The Windward School v. The State of New York,* No. 78–3474 (S.D.N.Y. Nov. 2, 1978) (State's decertification of school did not trigger procedural safeguards provision).

**11.** We intimate no views on plaintiffs' remedies in the event that financial circumstances at Jowonio precipitate the school's closing prior to the designation of an alternative placement for the handicapped children.