BEHAVIOR RESEARCH INSTITUTE, INC., & others[1] vs.
SECRETARY OF ADMINISTRATION & others.[2]

Bristol. February 5, 1991. - September 4, 1991.

Present: LIACOS, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Education*, Special educational needs. *Education of the Handicapped Act.
Mentally Retarded Person. Rate Setting Commission.*

Neither a provider of educational services to students with special needs,
nor a student receiving such services, was entitled by G. L. c. 71B or by
the Education of the Handicapped Act, 20 U.S.C. §§ 1400-1461
(1988), to have the rate of State reimbursement to the provider set at a
particular figure. [76-79]

Under G. L. c. 123B, § 2, and applicable regulations, a student's rights to
special educational services funded by the Department of Mental Re-
tardation were expressly conditioned on the availability of resources.
[79]

Where the Rate Setting Commission, as part of the settlement of an ad-
ministrative appeal, established a certain rate of State reimbursement
pursuant to G. L. c. 6A, § 32, to be received by a provider of special
educational services, the commission's action did not create in the pro-
vider any contractual right to receive the rate so established. [79-80]

CIVIL ACTION commenced in the Bristol Division of the
Probate and Family Court Department on June 29, 1990.

The case was heard by *Ernest I. Rotenberg*, J., and was
reported by him to the Appeals Court. The Supreme Judicial
Court granted a request for direct review.

---

[1]Joseph A. Ferrara, by his parent and guardian, Nancy B. Ferrara; and
Timothy E. Green, by his parents and co-guardians, Robert E. and Elena
J. Green.

[2]The Rate Setting Commission; the Department of Mental Retardation;
the Department of Education; the Division of Purchased Services; and the
Commonwealth.

*Roderick MacLeish, Jr.* (*Erik J. Frick* with him) for the plaintiffs.

*Douglas H. Wilkins,* Assistant Attorney General, for the defendants.

*Richard M. Bluestein, Karen J. Kepler & Robert J. Griffin,* for Massachusetts Association of Private 766 Schools, Inc., & others, amici curiae, submitted a brief.

O'CONNOR, J. Behavior Research Institute, Inc. (BRI), operates seven group care homes in Bristol County, licensed by the Department of Mental Retardation, and a school in Providence, Rhode Island, approved by the Massachusetts Department of Education for publicly funded special needs students pursuant to G. L. c. 71B (1990 ed.). BRI is a specialized facility providing care and treatment to individuals with extreme behavior disorders, and it serves severely handicapped children and young adults. Of a total of sixty-four BRI students (there were sixty-four on September 28, 1990), twenty-one are from Massachusetts. Five of the Massachusetts students are funded by the Department of Education pursuant to G. L. c. 71B, popularly known as c. 766 (special needs students). Fifteen of the remaining students from Massachusetts are funded by the Department of Mental Retardation and one is funded by the Department of Mental Health. The plaintiffs Joseph A. Ferrara and Timothy E. Green are BRI students. Ferrara is one of the five students funded under G. L. c. 71B. Green is funded by the Department of Mental Retardation. The ultimate question in this case, which is here as a result of a reservation and report by a judge of the Probate and Family Court, is whether BRI and the individual plaintiffs are entitled to have BRI paid for its services at an annual per-student rate of $153,351 as they contend. We answer that question in the negative.

The case began with a complaint filed by BRI in which BRI sought declaratory and injunctive relief effectively requiring payment of the $153,351 reimbursement rate for fiscal year 1991 (FY 1991). That rate had been agreed to in May, 1990, by BRI and the Rate Setting Commission in set-

tlement of an administrative appeal. However, in June, 1990, the Executive Office for Administration and Finance advised the Rate Setting Commission that, under St. 1989, c. 240, §§ 50 and 52, the regulations on which FY 1991 rates were set were subject to prior Administration and Finance approval. The Rate Setting Commission responded by announcing that it would submit its rate setting regulations for FY 1991 to the Executive Office for Administration and Finance and that its regulations would not take effect until they were approved. That action called into question whether the settlement agreement setting BRI's annual per-student reimbursement rate would be honored by the relevant Massachusetts agencies. The Department of Mental Retardation, one of the sources of BRI's funding, informed BRI that it would not pay the settlement figure. The settlement agreement was not approved by the Executive Office for Administration and Finance. That was the situation when BRI filed its complaint asserting its right to the $153,351 rate.

Then, on August 1, 1990, St. 1990, c. 150, §§ 42-44, was approved. Section 43 of c. 150 provided that "the rates for programs pursuant to chapter seventy-one B of the General Laws in the fiscal year commencing July first, nineteen hundred and ninety [FY 1991] shall be the same rates as those in effect for the fiscal year beginning July first, nineteen hundred and eighty-nine [FY 1990]." The defendants construed § 43 as freezing BRI's rate for FY 1991 at the FY 1990 level, which was considerably less than $153,351. BRI, joined by the individual plaintiffs, Ferrara and Green, filed an amended complaint, adding the division of purchased services, an agency established by St. 1990, c. 150, § 42, and the Commonwealth as defendants and adding to the original complaint a challenge to the scope and validity of St. 1990, c. 150, §§ 42-44. A judge of the Probate and Family Court allowed the parties' joint motion to reserve and report the case, and thereafter issued an order pending appeal establishing a rate of $149,039 commencing July 1, 1990 (the beginning of FY 1991).

On March 22, 1991, the Governor approved St. 1991, c. 6, § 54, amending and to some extent alleviating the rate freeze imposed by St. 1990, c. 150, § 43. As a result, BRI's statutorily authorized FY 1991 rate is $148,802, retroactive to July 1, 1990. However, because of the outstanding injunction, the division of purchased services has continued the rate of $149,039. Since the plaintiffs continue to seek a rate of $153,351, the parties agree that the case is not moot.

The plaintiffs' brief focuses almost entirely on their contentions that (1) St. 1990, c. 150, § 43, does not apply to BRI because BRI is not a "program pursuant to chapter 71B of the General Laws" within the meaning of those words in § 43, and (2) to the extent that § 43 does apply to BRI, § 43 violates the plaintiffs' constitutional and statutory rights. We need not and do not decide whether the fact that five of the Massachusetts students are funded pursuant to G. L. c. 71B results in BRI being a "program pursuant to chapter 71B," either wholly or in part. For purposes of this case, we assume, favorably to the plaintiffs, but without actually deciding the matter, that § 43 does not apply in any way to BRI. Given that assumption, § 43 does not stand in the way of a declaration or injunction that would recognize the plaintiffs' entitlement to BRI's being paid at the $153,351 rate for which it contends.

We make that assumption, which removes constitutional and other issues from the case, because it seems clear to us that, even if the plaintiffs' rights are in no way affected by St. 1990, c. 150, §§ 42-44, as the plaintiffs contend, the plaintiffs are not legally entitled to the particular rate they seek. The absence of an applicable statutory rate freeze would not by itself create a right to a particular rate. The plaintiffs are not entitled to a $153,351 rate simply because such a rate is not barred by St. 1990, c. 150, §§ 42-44. In order to prevail, the plaintiffs must identify the source or sources of the claimed entitlement. They have failed to do so.

The plaintiffs say that, under the Education of the Handicapped Act, 20 U.S.C. §§ 1400-1461 (1988), especially § 1412 (1), Ferrara, who is funded under G. L. c. 71B, is enti-

tled to a "free appropriate public education," and under G. L. c. 71B, § 2, he is entitled to an education that will assure his "maximum possible development." See *Stock* v. *Massachusetts Hosp. Sch.*, 392 Mass. 205, 210 (1984), cert. denied, 474 U.S. 844 (1985). The plaintiffs also contend that, in order for those rights to be satisfied, BRI must receive the $153,351 rate for FY 1991 set forth in the settlement agreement between BRI and the Rate Setting Commission. Unless such a rate is in effect, the plaintiffs argue, neither Ferrara's "individualized education plan," which is required by Federal regulations implementing the Education of the Handicapped Act, nor the individualized education plans of other BRI clients can be fully implemented, with resulting deprivation of Ferrara's and the other BRI clients' Federal and State statutory rights.

We see nothing in the relevant Federal and State statutes that requires a particular provider of services to be paid a particular rate. The plaintiffs do not attempt to show that there is no facility available that can provide Ferrara with the education to which he is entitled at a rate below $153,351, but argue only that BRI cannot do so. Nothing in the parties' detailed statement of agreed facts or elsewhere in the record shows that BRI is the only possible satisfactory placement for Ferrara. Ferrara's proper remedy, if he claims that he is being denied the education to which he is entitled, is not to challenge the rate set for BRI, but to challenge his placement. The Education of the Handicapped Act deals with placement problems by providing parents with a forum to challenge the placement. "The Education of the Handicapped Act . . . 20 U.S.C. § 1400 *et seq.* (1982 ed. and Supp. V), enacts a comprehensive scheme to assure that handicapped children may receive a free public education appropriate to their needs. To achieve these ends, the Act mandates certain procedural requirements for participating state and local educational agencies. In particular, the Act guarantees to parents the right to participate in the development of an 'individualized education program' (IEP) for their handicapped child, and to challenge the appropriateness of

their child's IEP in an administrative hearing with subsequent judicial review. See 20 U.S.C. § 1415 (1982 ed. and Supp. V)." *Dellmuth* v. *Muth*, 491 U.S. 223, 225 (1989). See *Fallis* v. *Ambach*, 710 F.2d 49, 55-56 (2d Cir. 1983). There is a clear distinction between the type of challenge contemplated in the Education of the Handicapped Act and a challenge, as here, to a rate of reimbursement to a particular provider of services.

None of the cases relied on by the plaintiffs stands for the proposition that a State Legislature is required to provide a particular level of funding for a particular private facility. In *Kerr Center Parents Ass'n* v. *Charles*, 897 F.2d 1463 (9th Cir. 1990), the case on which the plaintiffs appear principally to rely, the State of Oregon made State reimbursement of local school districts for special education services conditional upon the availability of funds, and then appropriated insufficient funds "to cover the cost of educating the handicapped children residing at Kerr Center *and other private facilities* . . ." (emphasis added). *Id.* at 1467. As the Attorney General argues here, "the ruling in *Kerr* turned on the finding that the insufficient appropriation made it impossible to comply with the Act." That has not been demonstrated, or even argued, here. Also, we think that the plaintiffs' argument gets little help from *Stanger* v. *Ambach*, 501 F. Supp. 1237 (S.D.N.Y. 1980), a decision that was severely undercut, if not entirely rejected, in *Fallis* v. *Ambach*, *supra* at 55 ("Although the district judge in *Stanger* permitted injunctive relief with respect to a dispute over a budget determination, we reject as too broad the language of the court that the setting of tuition reimbursement rates is a 'matter relating to . . . the provision of a free appropriate public education.' *Stanger*, 501 F. Supp. at 1239"). Finally, in our view, the plaintiffs' reliance on *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals*, 389 Mass. 705 (1983), is misplaced. That case does not involve a question about what rate should be set, but, rather, involves the question whether Boston or Brookline should pay the special education rate that had been set.

We have rejected the plaintiffs' argument that Ferrara, whose education is funded under G. L. c. 71B, is entitled by the Education of the Handicapped Act to have BRI's reimbursement rate set at a particular figure. Any argument that Ferrara's entitlement under G. L. c. 71B to an education that will assure his "maximum possible development" entitles him also to the payment of a particular rate to a particular provider must fail for the same reason that the Federal statutory argument fails. We note also that nothing in the Federal or State statutes, guaranteeing specified levels of education to handicapped persons, purports to create rights in, or give guarantees to, providers of services. BRI has no legitimate claim under the statutes.

The plaintiffs also suggest that the plaintiff Timothy Green, funded by the Department of Mental Retardation, has a statutory right to services conforming to his individual service plan (see 104 Code Mass. Regs. § 21.46 [1986]). However, students' rights to services under the mental retardation and mental health laws are expressly conditioned on availability of resources. General Laws c. 123B, § 2, provides that the Department of Mental Retardation shall provide services "in accordance with section two of chapter thirty A and *subject to appropriation*" (emphasis added). Title 104 Code Mass. Regs. § 20.21 (1) provides that clients have a right to services "to the extent of available resources," and 104 Code Mass. Regs. § 21.01 (1) (c) provides for services in accordance with, among other things, "the availability of needed services."

Next, we must consider whether the settlement agreement between BRI and the Rate Setting Commission concluding BRI's administrative appeal in May, 1990, provides BRI with a contract right, as BRI claims, and a meritorious claim of breach of contract calling for injunctive relief. The defendants argue that the settlement agreement only required the Rate Setting Commission to repromulgate BRI's FY 1991 rate of reimbursement. Since the commission did that, the defendants say, the commission did not violate any contract. The defendants also argue, correctly we think, that

"the establishment of a rate never, in and of itself, creates a contract for the payment of money." Chapter 6A, § 32 (1990 ed.), which gives the commission the power to set the rates of reimbursement to providers such as BRI, provides that "[n]otwithstanding any other law or regulation to the contrary . . . , each governmental unit shall pay to a provider of services . . . the rates for general health supplies, care and rehabilitative services and accommodations determined and certified by the commission." We have stated that the regulatory scheme in § 6A "establishes a rate setting mechanism. It creates neither an obligation on the part of any governmental unit to pay any money, nor an obligation on the part of any provider to render any services. Such obligations arise only when a provider and a governmental purchaser reach an agreement relating to provision of services." *Perkins Sch. for the Blind* v. *Rate Setting Comm'n*, 383 Mass. 825, 828 (1981). The establishment of a certain reimbursement rate in a settlement agreement does not thereby give a provider such as BRI a contractual right to receive that rate. The commission did everything that it was required to do under the terms of the settlement agreement.

Moreover, under St. 1989, c. 240, § 52, if any rates promulgated by the commission will result in costs in excess of those funded in the general appropriations act for that fiscal year, as was the case here, those rates must be submitted to the Executive Office for Administration and Finance for "prior approval." That agency never approved the $153,351 rate to which BRI claims it is entitled under the terms of the settlement agreement. Without the approval of the Executive Office for Administration and Finance, the agreed $153,351 rate is not an effective rate. We reject as meritless BRI's argument that, due to its inaction, coupled with BRI's reliance on the settlement agreement, the Executive Office for Administration and Finance is "estopped from withdrawing or disapproving BRI's FY 1991 rate as set forth in the Settlement Agreement."

We remand this case to the Probate and Family Court for the entry of a judgment denying injunctive relief and declar-

ing that the plaintiffs are not entitled to have BRI paid for its services at an annual per-student rate of $153,351.

*So ordered.*