MASSACHUSETTS HOSPITAL ASSOCIATION, INC., & others[1]
*vs.* DEPARTMENT OF PUBLIC WELFARE & others.[2]

Suffolk. December 6, 1994. - March 8, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Medicaid. Rate Setting Commission. Department of Public Welfare. Hospital,* Medicaid reimbursement. *Practice, Civil,* Summary judgment. *Statute,* Construction. *Administrative Law,* Agency, Rate regulation, Rate setting, Official notice, Regulations, Retroactive effect of regulation. *Notice,* Rate setting.

Disapproval by the Department of Public Welare of the fiscal year 1991 Medicaid reimbursement rates for "non-acute" hospitals as promulgated by the Rate Setting Commission was a valid exercise of the department's authority pursuant to G. L. c. 118E, § 4A [649-650]; the department's failure to comply strictly with the prodedural requirements of the statute, while complying substantively, did not affect the validity of the department's disapproval [650-651].

Certain proosed amendments to the State Medicaid plan submitted to the Health Care Financing Administration by the Department of Public Welfare relative to the reimbursements to "non-acute" hospitals were supported by adequate findings and the department's action was not demonstrated to be arbitrary, capricious or contrary to the requirements of Federal law. [651-654]

An alleged defect in the public notice required by 42 C.F.R. § 447.205, as applicable to proposed changes in rate setting for Medicaid reimburse-

[1]Eight "non-acute" hospital members of the Massachusetts Hospital Association: Youville Rehabilitation and Chronic Disease Hospital; Jewish Memorial Hospital; St. John of God Hospital; Massachusetts Respiratory Hospital; Middlesex County Hospital; New England Sinai Hospital and Rehabilitation Center; Shaughnessy-Kaplan Rehabilitation Hospital; and Franciscan Children's Hospital.

[2]Rate Setting Commission, Commissioner of Public Welfare and Associate Commissioner of Public Welfare. By St. 1993, c. 161, the Legislature transferred the duties and powers of the Department of Public Welfare (department) at issue in this appeal to the division of medical assistance. To avoid confusion, both parties continue to refer in their briefs to the department as a defendant.

ments to "non-acute" hospitals, did not invalidate the proposed changes; moreover, the party challenging the adequacy of the notice demonstrated no prejudice inasmuch as it had received actual notice of the proposed changes and had testified at a public hearing on the subject. [654-655]

Implementation of amended regulations in 114.1 Code Mass. Regs. § 28.00, setting new rates of Medicaid reimbursement to "non-acute" hospitals, after the rate year had commenced was not an impermissible retroactive establishment of those rates in violation of G. L. c. 6A; moreover, all parties understood that the rates for the year in question would be adjusted when approved at a later time. [655-656]

Where in 1992 the Health Care Financing Administration (HCFA) approved a methodology proposed by the Department of Mental Health for calculating an inflation factor for 1991 Medicaid reimbursements to "non-acute" hospitals, no other action of HCFA was required for payment to the hospitals of the two per cent wage increase for the 1991 fiscal year as mandated by G. L. c. 6A, § 37A (*a*). [656-657]

CIVIL ACTION commenced in the Superior Court Department on November 26, 1990.

The case was heard by *Barbara A. Dortch*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth A. Behar* (*Edward D. Kalman* with him) for the plaintiffs.

*Douglas H. Wilkins*, Assistant Attorney General, for the defendants.

LYNCH, J. This case arises from Massachusetts Hospital Association's (Association's) challenge to amendments to the State Medicaid plan and to the implementing regulations which establish changes in methodology to be used in setting Medicaid reimbursement rates for "non-acute" hospitals.[3] The Association moved for summary judgment seeking a declaration that the amendments to the State Medicaid plan and the resulting methodology to be used in setting Medicaid

---

[3] A "non-acute hospital" is a hospital which contains less than a majority of medical-surgical, pediatric, obstetric, and maternity beds as defined by the department of public health. See G. L. c. 6A, § 31 (1992 ed.).

reimbursement rates were procedurally and substantively in-
valid. The motion further sought a declaration that the Rate
Setting Commission (commission) may not apply the invalid
methodology to rates for non-acute hospitals for fiscal year
1991. The· Association also sought to compel reimbursement
for the services provided in fiscal year 1991 at the rates
which were established by the commission, according to the
previous rate setting methods. A Superior Court judge
granted summary judgment in favor of the Department of
Public Welfare (department), ruling as follows: the depart-
ment's disapproval of the fiscal year 1991 Medicaid reim-
bursement rates for non-acute hospitals established by the
commission on June 29, 1990, was valid; the amendments to
the State Medicaid plan which were submitted to the Health
Care Financing Administration (HCFA) were supported by
adequate findings; the amended regulations in 114.1 Code
Mass. Regs. § 28.00 (1989) are not invalid as a result of any
alleged defect in public notice; the implementation of the
amended regulations in 114.1 Code Mass. Regs. § 28.00
would not be impermissibly retroactive and would not violate
G. L. c. 6A, §§ 32, 36, 37, 37A, 39 (1992 ed.); the Associa-
tion was not entitled to the payment of the two per cent wage
increase mandated by G. L. c. 6A, § 37A (*a*), until HCFA
approved a fiscal year 1991 inflation methodology. The Asso-
ciation filed a timely notice of appeal. We transferred the
case here on our own motion, and now affirm.

A summary of the interplay between the State and Federal
agencies involved in the implementation of the Medicaid pro-
gram is helpful in understanding the facts of this case. Under
Title XIX of the Social Security Act, often referred to as the
Medicaid Act, 42 U.S.C. §§ 1396 et seq. (1988), States re-
ceive Federal grants to provide necessary medical assistance
to the poor. If a State chooses to participate in the Medicaid
program, it must submit to HCFA a State plan for medical
assistance which satisfies the substantive requirements of 42
U.S.C. § 1396a(a)(13)(A), and the procedural requirements
set forth in 42 C.F.R. § 447.200 (1987). Any changes in the
payment rates established in the State plan require the State

Medicaid agency to submit plan amendments to HCFA for approval. 45 C.F.R. § 205.5 (a) (1988).

Massachusetts participates in the Medicaid program through two State entities, the department and the commission. The commission is responsible for setting the reimbursement rates for Medicaid providers, such as the plaintiff hospitals, pursuant to G. L. c. 6A, § 32. These hospitals submit their fiscal year budgets to the commission for review, and the commission approves the hospitals' reimbursable costs, as well as the amount of revenue needed from all payors to meet these costs. The department is responsible for approving the rates promulgated by the commission for administering the program, for submitting any changes in the State plan to the HCFA for approval, and for making sure that the State continues to comply with the Federal Medicaid regulations. See G. L. c. 118E, §§ 3, 4, 6 (1992 ed.); *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass. 431, 433-434 (1990).

Following a public hearing, held on May 21, 1990, the commission promulgated new rates for non-acute hospitals based on the provisions of 114.1 Code Mass. Regs. § 28.00, the regulations governing the setting of rates for fiscal year 1990. On August 3, 1990, the department notified the commission that, pursuant to G. L. c. 118E, § 4A, it did not approve of the rates the commission had promulgated. The commission had set an inflation factor between 5.58% and 5.78% for all payors. The department preferred a 3.6% inflation factor.

On September 30, 1990, pursuant to Federal regulations, the department submitted to HCFA a proposed amendment to the State Medicaid plan. This amendment (TN90-19) proposed changes in the reimbursement methodology to be applied to medical services provided by non-acute hospitals. It proposed a change in the inflation factor to be used to update the reimbursement rates for non-acute hospitals each year. The changes were to take effect on July 1, 1990.

On November 7, 1990, HCFA notified the department that its failure to update fiscal year 1991 payment rates for non-acute hospitals' services to reflect inflation and costs be-

yond the control of the hospital was not in compliance with requirements of the Medicaid program or the approved State plan.

On December 31, 1990, the department submitted to HCFA a new amendment (TN90-24) to the State plan which was intended to take effect as of October 1, 1990. The amendment proposed that the adjusted base year costs of non-acute hospitals should be increased based on Data Resources, Inc.'s lowest reasonable forecast of the Massachusetts consumer price index, which was stated to be 3.6%.[4] The amendment also proposed a delay in the two per cent add-on for wage inflation for fiscal year 1991 until an audit determined the wage costs actually incurred by each hospital.[5] Following the audit, if it was determined that the individual hospitals used the increase for its intended purpose, the two per cent increase would be restored to the hospital.

On January 18, 1991, the commission published notice of a public hearing on proposed amendments to 114.1 Code Mass. Regs. § 28.00, the State regulations governing Medicaid reimbursement that would implement the proposed amendments to the State plan. On March 1, 1991, this public hearing was held at which the Association presented testimony through counsel.

On August 15, 1991, the department presented its findings to HCFA that the rates calculated under the proposed methodology would cover the costs of the majority of non-acute hospitals.

On March 13, 1992, HCFA disapproved the department's first proposed amendment, TN90-19, because of the State's failure to publish a public notice of the amendment, in compliance with 42 C.F.R. § 447.205. HCFA approved the second proposed amendment, TN90-24, but set an effective date

---

[4]The inflation factor was to represent the anticipated cost increases, incurred by efficient and economically operated facilities, due to the impact of inflation.

[5]Pursuant to G. L. c. 6A, § 37A (a), each non-acute hospital's composite inflation index was increased by an additional two per cent to be used for increases in salaries and wages for direct care staff.

of January 19, 1991, the day after the commission published notice of the proposed changes in compliance with Federal regulations. The department did not contest the disapproval of the first proposed amendment or the delayed effective date of the later amendment.

On April 16, 1992, following HCFA's approval of the State plan amendments, the commission adopted revised 1991 Medicaid reimbursement rates for the period January 19, 1991, through the end of the fiscal year. For the period prior to the effective date of the amendments (July 1, 1990 - January 18, 1991), rates were established pursuant to the methodology contained in the previous State plan.

Summary judgment shall be granted where there is no material facts in dispute, and the moving party is entitled to judgment as a matter of law. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991). *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

1. *The department's disapproval of the commission's proposed 1991 rates was valid.* The department's disapproval of the 1991 fiscal year Medicaid reimbursement rates promulgated by the commission for non-acute hospitals was a valid exercise of authority pursuant to G. L. c. 118E, § 4A.[6] We

---

[6]General Laws c. 118E, § 4A (1992 ed.), provides in pertinent part: "The department shall review, and approve or disapprove, any change in rates or in rate methodology proposed by the rate setting commission. The department shall review such proposed rate changes for consistency with department policy and federal requirements, and with the available funding authorized in the final budget for each fiscal year prior to certification of such rates by the commission . . . . The department shall, whenever it disapproves a rate increase, submit the reasons for disapproval to the com-

do not regard this statute as in conflict with G. L. c. 6A, § 32. [7] Although both statutes deal with the same subject, they can be read together to effectuate a consistent body of law. See *Boston Hous. Auth.* v. *Labor Relations Comm'n,* 398 Mass. 715, 718 (1986); *Hadley* v. *Amherst,* 372 Mass. 46, 50-51 (1977). General Laws c. 118, § 4A, does not abridge the powers granted to the commission; the commission still maintains sole power to establish Medicaid reimbursement rates. The department has the authority to approve or to disapprove rates but does not have the authority itself to establish those rates. In reading these two statutes together, it is clear that the department has final authority over health care rates set by the commission.

We agree with the judge's determination that the department's disapproval of the rates proposed by the commission is effective even if the department failed to comply with the procedural mandates of G. L. c. 118E, § 4A. The statute requires that, if the department disapproves of a rate, it must submit reasons for its disapproval and provide recommendations for changes. These reasons and recommendations are required to be submitted no later than the date of the public hearing on the changes, which in this case was May 21, 1990. See G. L. c. 118E, § 4A. Despite the fact that the department's disapproval occurred after May 21, 1990, we are not persuaded that the result is that the proposed rates go into effect without the department's approval. The language in § 4A is clear and unambiguous in stating that rates will not go into effect without the department's approval. See *Behavior Research Inst., Inc.* v. *Secretary of Admin.,* 411 Mass. 73, 80 (1991). Nothing in the statute indicates that

mission together with such recommendations for changes. . . . [N]o rates shall take effect without the approval of the department."

[7]General Laws c. 6A, § 32 (1992 ed.), provides in pertinent part: "There shall be a rate setting commission . . . [which] shall have the sole responsibility for establishing rates to be paid providers of health care services by governmental units . . . which are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal law . . . ."

the Legislature intended that failure of the department to adhere strictly to procedure would result in the implementation of unapproved rates. See *Brennan* v. *The Governor*, 405 Mass. 390, 395 (1989) (no statutory language indicating that Legislature intended particular consequence to result from failure to comply with statute). Absent a clear showing on the face of the statute of such an intent, there is no basis for interpreting the statute in such a manner as to undermine its whole purpose. See *Reading* v. *Murray*, 405 Mass. 415, 417 (1989).

The department substantively complied with G. L. c. 118E, § 4A, by providing the commission with its reasons for disapproving the proposed rates and also outlining its recommendations for changes. In a memorandum, dated May 23, 1990, the department presented a general overview to the commission concerning its intent to apply more stringent cost factors to reimbursement rates. Further, on June 27, 1990, the department specifically outlined its reasons for disapproving the commission's rates, most notably that the inflation forecast used in the rate methodology must be the lowest reasonable forecast of price increases that the hospitals would be compelled to incur. On August 3, 1990, the department formally notified the commission that it did not approve the commission's rates. In this letter, the department reiterated its disapproval of the commission's inflation factor and provided a recommendation of a factor (3.6%) that would be approved. Although this activity did not take place prior to the May 21, 1990, hearing, and thus did not comply strictly with the requirements of G. L. c. 118E, § 4A, we conclude that the department substantively complied with the statute. Therefore, the judge was correct in ruling that the department validly exercised its authority to disapprove the commission's proposed rates. Absent the department's approval, the commission's proposed reimbursement rates for non-acute hospitals for fiscal year 1991 were not effective.

2. *The amendments to the State Medicaid plan were supported by adequate findings.* Each State participating in the Medicaid program must submit a Medicaid plan to the

HCFA. 42 U.S.C. § 1396(a). Any changes in payment rates established in the State plan require the State Medicaid agency to submit plan amendments to HCFA. 45 C.F.R. § 205.5 (a). The regulations further require the State to submit findings and to provide assurances to HCFA that any changes in payment methods will result in rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities, as required by 42 U.S.C. § 1396a(a)(13)(A) (Boren Amendment); 42 C.F.R. § 447.253 (a), (b).[8] The standard of review is to determine whether the agency conformed with the controlling statute. See *Folden* v. *Washington State Dep't of Social & Health Servs.*, 744 F. Supp. 1507, 1525 (W.D. Wash. 1990); *Colorado Health Care Ass'n* v. *Colorado Dep't of Social Servs.*, 842 F.2d 1158, 1164 (10th Cir. 1988). We are limited to a determination whether the State action is arbitrary, capricious, or contrary to law. *Folden* v. *Washington State Dep't of Social & Health Servs.*, *supra* at 1525. We will uphold the discretionary actions of the department as long as they are "rationally connected to relevant factors or data" and do not conflict with a controlling statute or regulation. *Colorado Health Care Ass'n* v. *Colorado Dep't of Social Servs.*, *supra* at 1167. In this determination, we must show deference to the choices made by the department officials. *Folden* v. *Washington State Dep't of Social & Health Servs.*, *supra*.

The process that the State must go through in making the required findings does not require special studies. The State agency simply must undertake a "reasonably principled analysis" of their rates. *Massachusetts Fed'n of Nursing Homes,*

---

[8]The Boren Amendment, 42 U.S.C. § 1396(a)(13)(A), in pertinent part, requires the State to provide "for payment . . . of the hospital services . . . provided under the plan through the use of rates . . . which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards . . . ."

*Inc.* v. *Massachusetts*, 772 F. Supp. 31, 37 (D. Mass. 1991), quoting *Folden* v. *Washington State Dep't of Social & Health Servs.*, *supra* at 1532. The State then uses these findings to make assurances to HCFA that the proposed rates are reasonable and adequate within the meaning of the Boren Amendment. The Boren Amendment, however, was intended to enhance State flexibility in developing rate setting methodology. *Coalition of Mich. Nursing Homes, Inc.* v. *Dempsey*, 537 F. Supp. 451, 459 (E.D. Mich. 1982). Under this new standard, States are able to set their own reimbursement rates without burdensome Federal oversight of the methodology used, as had been the case under the former reasonable cost related standard. See *id.* For purposes of determining whether the State's rates fall within the range of reasonableness required by the Boren Amendment, it is not necessary to probe beyond the resulting reimbursement rate to the underlying rate setting methodology.[9] See *Folden* v. *Washington State Dep't of Social & Health Servs.*, *supra* at 1535; *Colorado Health Care Ass'n* v. *Colorado Dep't of Social Servs.*, *supra* at 1167; *Coalition of Mich. Nursing Homes, Inc.* v. *Dempsey*, *supra* at 459.

We conclude that the department engaged in a "reasonably principled analysis" of their rates and made adequate assurances to HCFA that their proposed reimbursement rates met the substantive requirements of the Boren Amendment. See *Massachusetts Fed'n of Nursing Homes, Inc.* v. *Massachusetts*, *supra* at 37; *Folden* v. *Washington State Dep't of Social & Health Servs.*, *supra* at 1532. Furthermore, the Association failed to show that the department "acted arbitrarily, capriciously or contrary to the specific requirements

---

[9]The hospitals object to the department's proposed inflation factor and to the department's reliance on Data Resources, Inc.'s, forecast in formulating this factor. It is not necessary to examine the individual components which comprise the rate; our review is limited to a determination whether the resulting reimbursement rate complies with the Boren Amendment. See *Folden* v. *Washington State Dep't of Social & Health Servs.*, 744 F. Supp. 1507, 1535 (W.D. Wash. 1990); *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n*, 387 Mass. 122, 135 (1982).

of federal law" with respect to the "findings" requirement of 42 C.F.R. § 447.253(b). *Folden* v. *Washington State Dep't of Social & Health Servs., supra* at 1532. *Coalition of Mich. Nursing Homes, Inc.* v. *Dempsey, supra* at 459.

The department's letter to HCFA, dated August 15, 1991, demonstrates that the department undertook a reasonably principled review of the rates and determined that they were reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities. The department evaluated the significance of the changed inflation factor by submitting findings which used the approved fiscal year 1990 rate as a comparison. The department further calculated the per cent reduction in Medicaid rates which the proposed inflation factor would cause to non-acute hospitals as well as the per cent reductions in chargeable revenue which would be experienced by the majority of the non-acute hospitals. The department provided for an added amount for costs beyond the hospital's reasonable control, as well as an added amount for approved new services. Based on these comparisons, the department assured HCFA that the proposed rates would, on average, be 5.62% greater than the reasonable costs established for the fiscal year 1990. These findings established a sufficient nexus between the costs of operating an efficient and economic facility and the proposed reimbursement rate, and demonstrated that the department did not arbitrarily propose a rate that was not supported by a bona fide finding process.

3. *The amended regulations in 114.1 Code Mass. Regs. § 28.00 are not invalid as a result of any alleged defect in public notice.* Pursuant to 42 C.F.R. § 447.205, the department is required to provide public notice of any significant proposed change in the methodology and standards for rate setting. HCFA determined that the notice, published by the commission on January 18, 1991, satisfied the public notice requirements of 42 C.F.R. § 447.205. This determination is entitled to considerable weight. See *ABCD, Inc.* v. *Commissioner of Pub. Welfare*, 378 Mass. 327, 333-334 (1979) (Federal agency's interpretation of regulation entitled consid-

erable weight in judicial proceeding). HCFA's approval of the State plan is a strong indication of State compliance with applicable statutes and regulations. See *Massachusetts Fed'n of Nursing Homes* v. *Massachusetts, supra* at 39.

Even if the notice was not in compliance with 42 C.F.R. § 447.205, a defect in the notice requirements will not invalidate a proposed change, where the complaining party has received actual notice of the proposed changes and, therefore, is able to make comments to the same degree as it would had the notice provisions been fully satisfied. In such instances, full compliance with 42 C.F.R. § 447.205 will not be required. *California Ass'n of Bioanalysts* v. *Rank,* 577 F. Supp. 1342, 1350 (C.D. Cal. 1983). Additionally, the notice requirements are not strictly enforced when the complaining party is a Medicaid provider as distinguished from a Medicaid recipient and is not prejudiced by the notice defect. See *id.* at 1349; *Michigan Hosp. Ass'n* v. *Department of Social Servs.,* 555 F. Supp. 675, 680 (E.D. 1983).

We agree with the judge that the Association is bound by actual notice of the proposed changes in 114.1 Code Mass. Regs. § 28.00. Not only did the Association receive actual notice of the changes, but it also testified at the public hearing on March 1, 1991, with respect to the proposed changes. In light of the Association's actual notice and testimony at the public hearing, it cannot claim that it was in any way prejudiced by the department's alleged failure to comply with 42 C.F.R. § 447.205.

4. *The implementation of the amended regulations in 114.1 Code Mass. Regs. § 28.00 would not be impermissibly retroactive.* Although G. L. c. 6A calls for the establishment of rates on a prospective basis, the statute does not prohibit the commission from setting rates once the rate year has commenced. To rule otherwise would be inconsistent with the dominant purpose of the statute. See *Reading* v. *Murray,* 405 Mass. 415, 417 (1989); *Brennan* v. *The Governor,* 405 Mass. 390, 395 (1989). The Federal regulations anticipate that State plans providing new rate setting methods will not always be established in advance of the fiscal year.

With HCFA approval, the plan amendments, other than those providing additional services or expanding eligibility, may become effective on a date requested by the State. 42 C.F.R. § 430.20 (b) (2).

Additionally, we have held that only where vested substantive rights of the parties have been adversely affected can a regulation be viewed as impermissibly retroactive. *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 574 (1986), citing *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 781 (1975). In this case, the Association cannot claim to have had a vested substantive right in the rates promulgated by the commission on June 29, 1990, because those rates were not approved by the department and, therefore, never became effective. Without the department's approval, the 1990 approved rates remained in effect. See *New England Memorial Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 296, 303-304 (1985) (old rates remain in effect if new rates not established). The judge found that the parties understood that the non-acute hospitals would be reimbursed at the 1990 rates and that the rates would be adjusted as soon as the 1991 amendments were approved.

5. *The Association was not entitled to the payment of the two per cent wage increase mandated by G. L. c. 6A, § 37A (a), until HCFA approved a fiscal year 1991 inflation methodology.*[10] We agree with the judge's ruling that a new inflation factor must be approved by HCFA before the two per cent wage increase can be calculated. However, we conclude that, by approving the department's proposed amendment TN90-24, HCFA approved the department's revised inflation methodology. In light of HCFA's approval of the amendments on March 13, 1992, no other action by HCFA was

---

[10]We agree with the judge's determination that the two per cent wage increase must be paid at the beginning of the fiscal year. Accordingly, the portion of TN90-24 and 114 Code Mass. Regs. § 28.00 which allows for a postponement of this payment until completion of an audit to determine a hospital's actual increased costs is void. The parties do not appeal from this determination. The only issue is whether HCFA's approval of TN90-24 constituted an approval of the State's resulting reimbursement rates.

required before the approved amendments could be implemented.

*Judgment affirmed.*