# MASSACHUSETTS GENERAL HOSPITAL *vs.* COMMISSIONER OF THE DIVISION OF MEDICAL ASSISTANCE.

No. 05-P-642.

Suffolk. March 10, 2006. - June 8, 2006.

Present: LENK, CYPHER, & GRAHAM, JJ.

*Division of Medical Assistance. Medicaid. Hospital,* Medicaid reimbursement. *Due Process of Law,* Vagueness of regulation. *Administrative Law,* Regulations. *Words,* "Medically necessary."

A hospital seeking review of a decision of the Division of Medical Assistance (division) denying the hospital reimbursement for inpatient services that it had provided to three Medicaid patients failed to demonstrate that the division's regulations governing reimbursement for inpatient services were either impermissibly vague [489-492] or inconsistent with the Federal legislative mandate to assure that payments were consistent with efficiency, economy, and quality of care [492-495].

This court remanded a matter to the Superior Court for a determination whether substantial evidence existed to support a decision of the Division of Medical Assistance to deny a hospital reimbursement for inpatient services that the hospital had provided to three Medicaid patients. [495]

CIVIL ACTION commenced in the Superior Court Department on July 9, 2003.

The case was heard by *Nonnie S. Burnes,* J., on a motion for judgment on the pleadings.

*James J. Arguin,* Assistant Attorney General, for the defendant.

*Peter V. Kent (Charlene E. Kent* with him) for the plaintiff.

GRAHAM, J. On June 13, 2003, after an adjudicatory hearing, a hearing officer of the Division of Medical Assistance (Division[1]) denied the plaintiff, Massachusetts General Hospital (MGH),

---

[1]In 2003, the Division of Medical Assistance was renamed the Office of Medicaid. As this action was begun before this name change occurred, we refer to the Office of Medicaid by its former title.

reimbursement for inpatient services it provided to three Medicaid patients. The denial was based on a determination that the provision of inpatient services was not "medically necessary," as required by the regulations governing Medicaid reimbursement. MGH sought review in the Superior Court pursuant to G. L. c. 30A, § 14(7), and moved for judgment on the pleadings to vacate the Division's decision. A judge of the Superior Court granted the motion and reversed the Division's decision on the basis that the Division's regulations violated MGH's due process rights because they failed to provide the plaintiff with sufficient "guidance for determining whether a patient admission is appropriate." The judge also determined that the Division "improperly relied upon hindsight" in making its determinations. The Division appeals from the Superior Court judgment. We reverse and remand for further proceedings consistent with this opinion.

1. *Background.* a. *The patients.* The reimbursements at issue were sought by MGH for services provided to three Medicaid patients, whom we call AC, DH, and EQ. In conjunction with making his determination that denial of reimbursement for inpatient services was appropriate, the Division's hearing officer made the following findings of fact as to these patients.

> "Member AC, a 58 year-old female with a history of asthma, atrial fibrillation, hypertension, and status post an atrial septal defect repair, was admitted to the emergency room with low back pain after a fall. . . . [Her] X-rays showed a compression fracture at L2. . . . [She] had no concerning neurological signs, a temperature of 101 degrees, a pulse of 95, a respiratory rate of 24, a blood pressure of 136/82, and an oxygen saturation of 94%. She had mild left lower quadrant tenderness and expiratory wheezes. A chest X-ray was normal, and urinalysis was positive for white blood cells. . . . [She] was treated with oral antibiotics, oral pain medications, and nebulizers. . . . Compression fractures are usually managed in an outpatient setting. . . . Member AC had limited social supports."

> "Member PH, a 61 year-old male, presented to the hospital with a bulge in the left inguinal area. He underwent an elective hernia repair on November 7, 2000

in the outpatient setting. . . . [He] emerged from surgery without complications . . . . [He] was upgraded to the inpatient setting on November 8 and discharged on November 9. He had some nausea and one episode of vomiting following IV hydration. . . . [I]n 1998 [he] also experienced nausea following general anesthesia . . . . IV fluids, antiemetics and antibiotics are routine following surgery and could have been provided to P.H. in an outpatient setting. . . . In Dr. Hopkins' [MGH's expert witness's] opinion, member PH's vomiting 24 hours after surgery warranted his admission as an inpatient."

"Member EQ, a 52 year-old male with [a] history of diabetes, presented to the emergency room on February 2, 2002 following a two-day history of vomiting. . . . [He] was admitted on February 2 and discharged on February 6 . . . [His] tests were within normal limits, and there was no concern of intra-abdominal issues. . . [He] was improving each day. In Dr. Siegel's [the Division's expert witness's] opinion, the care provided to [him], while appropriate, could have been provided to him in a specially designated hospital observation bed. . . . Member EQ was a brittle diabetic. In Dr. Hopkins['] opinion, his condition necessitated active management of his glucose and insulin levels. However, [his] condition did not require active intervention."

b. *The regulations.* The Division is responsible for administering the Massachusetts Medicaid program. Medicaid "is a joint Federal and State program established under Title XIX of the Social Security Act designed to provide medical services to those in financial need." *Athol Memorial Hosp.* v. *Commissioner of the Div. of Med. Assistance,* 437 Mass. 417, 418 n.3 (2002). In order to receive Federal funds, the Division is required by Federal law to establish administrative mechanisms to "safeguard against unnecessary utilization of . . . care and services and to assure that payments are consistent with efficiency, economy, and quality of care. . . ." 42 U.S.C. § 1396a(a)(30)(A) (2000).

To comply with this requirement, the Division issued 130 Code Mass. Regs. § 450.204 (2001), which provides that only "medically necessary" services will be reimbursed. A service

is medically necessary if it is (1) reasonably appropriate to the patient's medical needs (i.e., medically appropriate) and (2) provided in the appropriate setting (i.e., outpatient or inpatient).[2] The Division has also established a utilization management program to conduct reviews of hospital admissions. This program is based on peer review and is designed to ensure that the requirements of 130 Code Mass. Regs. § 450.204 are met.[3] See 130 Code Mass. Regs. §§ 450.206, 450.207 (1999).

The Division denied reimbursement for services provided by

---

[2]Title 130 Code Mass. Regs. § 450.204 (2001) reads as follows:
"A service is 'medically necessary' if:

"(1) it is reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the member that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity; and

"(2) there is no other medical service or site of service, comparable in effect, available, and suitable for the member requesting the service, that is more conservative or less costly to the Division. Services that are less costly to the Division include, but are not limited to, health care reasonably known by the provider, or identified by the Division pursuant to a prior authorization request, to be available to the member through sources described in 130 CMR 450.317(C), 503.007, or 517.007."

[3]The utilization management program prepayment review is primarily administered by the Massachusetts peer review organization (MassPRO), which the Division appointed to conduct this review. The review occurs in several stages and is based on the medical records submitted by the hospital to the Division, pursuant to 130 Code Mass. Regs. § 450.209(B) (1999). A registered nurse conducts an initial screening of the records; the nurse may either approve a claim or refer it to a physician reviewer, but may not independently deny a claim. The referred claims are then reviewed by a licensed physician actively practicing in the same clinical discipline as the care in question. If the reviewing physician determines that reimbursement should be denied, a proposed initial determination is sent to the hospital.

If the hospital disagrees with the determination, it must respond by submitting additional documentation or by a teleconference with the reviewing physician. The file is then reviewed by a second physician. If the second physician upholds the initial determination, an initial admission denial is sent to the hospital.

The hospital may then file for reconsideration of the matter, after which a third physician will evaluate the file. If this physician concurs with the decision, a final determination letter is sent to the hospital, notifying it of the decision. The hospital may then file an appeal for a hearing before the Divi-

MGH in the three cases currently at issue based on MGH's failure to show that the services it provided were "medically necessary" within the meaning of 130 Code Mass. Regs. § 450.204. In each case, the Division determined that the services provided to the patients satisfied the first prong of the test, as they were "medically appropriate," but did not satisfy the second prong of the test because they should have been provided in an outpatient, rather than an inpatient, setting.

MGH appealed from these determinations, arguing that the Division's regulations governing the utilization management program do not provide sufficient guidance on when inpatient services are appropriate and allow the Division to make arbitrary decisions. The Superior Court judge reversed the Division's decision based on her determination that the regulations violated due process because they do not provide hospitals with adequate guidance on the appropriate standards applying to inpatient admissions. The judge also determined that the Division's hearing officer improperly relied on hindsight in making his determination. The Division contests both of these determinations on appeal.[4]

*2. Validity of regulations.* On appeal, MGH relies on two legal theories to support its argument that the Division's regulations are invalid. First, it argues that the regulations are impermissibly vague, in violation of the Fourteenth Amendment to the United States Constitution. Second, it argues that the

---

sion to determine whether the decision is erroneous.

When reviewing the file, each physician will review the "inpatient services provided to members to determine the medical necessity, pursuant to 130 CMR 450.204 . . . . Reviewers consider the medical-record documentation of clinical information available to the admitting provider at the time the decision to admit was made. Reviewers do not deny admissions based on what happened to the member after the admission. However, if an admission was not medically necessary at the time of the decision to admit, but the medical record indicates that an inpatient admission later became medically necessary, the admission will be approved as long as all other Division requirements are met." 130 Code Mass. Regs. § 415.414(B)(1) (2000).

[4]MGH appealed from the Division's decision both on constitutional grounds and on the basis that the decision was unsupported by substantial evidence. The judge did not address the question of substantial evidence because she reversed on constitutional grounds pursuant to a motion for judgment on the pleadings. Neither party raises the issue of substantial evidence on appeal before us.

regulations, as administered, are in conflict with the Federal legislative mandate under 42 U.S.C. § 1396a(a)(30)(A).

a. *Due process.* We begin by reviewing MGH's due process argument. "A law is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application,' " *Caswell* v. *Licensing Commn. for Brockton,* 387 Mass. 864, 873 (1983), quoting from *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926), or if it "subjects people to an unascertainable standard." *Brookline* v. *Commissioner of the Dept. of Envtl. Quality Engr.,* 387 Mass. 372, 378 (1982).

Challenges for vagueness are usually raised in the criminal context. See *Massachusetts Fedn. of Teachers, AFT, AFL-CIO* v. *Board of Educ.,* 436 Mass. 763, 780 (2002). While civil statutes are also subject to scrutiny for vagueness, "[t]he test is less strict when the law involves the regulation of business and economic activity and does not inhibit the exercise of constitutionally protected rights." *Ibid.* We also limit our analysis "to whether [the regulations are] unconstitutionally vague as applied in this case," without considering its constitutionality as applied to other cases. *Caswell* v. *Licensing Commn. for Brockton,* 387 Mass. at 873.

In addition, we recognize that "the practical necessities of discharging the business of government inevitably limit the specificity with which [a regulatory agency] can spell out prohibitions." *Brookline* v. *Commissioner of the Dept. Of Envtl. Quality Engr.,* 387 Mass. at 378, quoting from *Boyce Motor Lines, Inc.* v. *United States,* 342 U.S. 337, 340 (1952). We also recognize that the "subject matter and the circumstances" will affect the degree of certainty to which standards can be established. *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 118 (1955).

The Division's regulations, as applied to the present case, do not fall below this standard. In addition to defining the term "medically necessary" in 130 Code Mass. Regs. § 450.204, the regulations provide hospitals with several sources of guidance in interpreting this definition. Title 130 Code Mass. Regs. § 415.402 (1999) provides definitions related to inpatient and

outpatient services.[5] Title 130 Code Mass. Regs. § 415.414(C) (2000) provides a list of factors that doctors should consider when deciding whether to admit an individual as an inpatient.[6] And the acute inpatient admission guidelines, to which reference is made in 130 C.F.R. § 415.414(C)(7), provide concrete examples of situations in which inpatient hospital admission would generally *not* be medically necessary.[7]

---

[5]"*Acute Inpatient Hospital* — a facility that . . . provides diagnosis and treatment for patients who have any of a variety of medical conditions requiring daily physician intervention as well as full-time availability of physician services . . . ."

"*Inpatient Admission* — the admission of a member to an acute inpatient hospital for the purposes of receiving inpatient services in that hospital."

"*Inpatient Services* — medical services provided to a member admitted to an acute inpatient hospital."

"*Observation Services* — outpatient hospital services provided anywhere in an acute inpatient hospital, to evaluate a member's condition and determine the need for admission to an acute inpatient hospital. Observation services are provided under the order of a physician, consist of the use of a bed and intermittent monitoring by professional licensed clinical staff, and may be provided for more than 24 hours."

"*Outpatient Hospital Services* — medical services provided to a member in a hospital outpatient department. Such services include, but are not limited to, emergency services, primary-care services, observation services, ancillary services, day-surgery services, and recovery-room services."

"*Outpatient Services* — medical services provided to a member in an outpatient setting . . . ."

[6]Factors listed in 130 Code Mass. Regs. § 415.414(C) include the "(1) member's medical history; (2) member's current medical needs; (3) severity of the signs and symptoms exhibited by the member; (4) medical predictability of an adverse clinical event occurring with the member; (5) results of outpatient diagnostic studies; (6) types of facilities available to inpatients and outpatients . . . ."

[7]The guidelines include the following provisions:

"1. The admission occurs following observation services, and the admitting provider has not documented at least one of the following in the medical record at the time the decision to admit is made:

[(a)] Failure to respond to outpatient treatment and a clear deterioration of the patient's clinical status;

[(b)] a significant probability that the treatment plan will continue to need frequent clinical modifications and what specific modifications are necessary;

[(c)] instability of the patient that is a deviation from either normal clinical parameters or the patient's baseline; or

The guidelines read in conjunction with the regulations do not present an "unascertainable standard," nor do they require "persons 'of common intelligence [to] necessarily guess at [their] meaning and differ as to [their] application.' " *Caswell* v. *Licensing Commn. for Brockton,* 387 Mass. at 873, quoting from *Smith* v. *Goguen,* 415 U.S. 566, 572 n.8 (1974). See *Brookline* v. *Commissioner of the Dept. of Envtl. Quality Engr.,* 387 Mass. at 387. See also *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 126-130 (1985) (finding that regulation disciplining accountants for acts "discreditable to the profession" was not impermissibly vague); *Cherubino* v. *Board of Registration of Chiropractors,* 403 Mass. 350, 356-358 (1988) (finding that regulation disciplining chiropractor for "[o]verutilization of practice" was not impermissibly vague).

b. *Compliance with Federal mandate.* We now address the plaintiff's claim that the Division's regulations were inconsistent with the Federal legislative mandate. When reviewing the

---

[(d)] a requirement for more intensive services than were already being delivered while the patient was on observation status, and a physician's order for each specific new service.

\* \* \*

"3. The admission is for further monitoring or observing for potential complications when the member undergoes a procedure that is appropriately performed in an outpatient setting according to the current standards of care, the procedure is performed without complications, and the member's clinical status is approaching either normal clinical parameters or his or her baseline.

"4. The admission is primarily for providing or monitoring the services and treatment of a member with multiple or complex medical needs whose needs were adequately being met in a setting other than an acute inpatient hospital prior to that admission.

\* \* \*

"10. The admission is primarily for a continuation of treatment or monitoring that has already been delivered effectively in the home, hospital outpatient department, or other institutional setting.

\* \* \*

"12. The admission of a member who has simple, uncomplicated, outpatient surgery and is being admitted primarily because of . . . the need for postoperative observation.

"13. The admission is primarily due to the:

\* \* \*

[(e)] need to . . . arrange home care or other noninstitutional services;

[(f)] age of the member;

[(g)] convenience of the . . . member . . . ."

Division's regulations "we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). However, "a regulation that is irreconcilable with an agency's enabling legislation cannot stand." *Quincy* v. *Massachusetts Water Resources Authy.*, 421 Mass. 463, 468 (1995).

In determining "whether the agency conformed with the controlling statute[,] . . . . [w]e are limited to a determination whether the State action is arbitrary, capricious, or contrary to law." *Massachusetts Hosp. Assn.* v. *Department of Pub. Welfare*, 419 Mass. 644, 652 (1995). See *Tarin* v. *Commissioner of the Div. of Med. Assistance*, 424 Mass. 743, 750 (1997). "[A] court cannot 'substitute [its] judgment as to the need for a regulation, or the propriety of the means chosen to implement the statutory goals, for that of the agency, so long as the regulation is rationally related to those goals.' " *Massachusetts Fedn. of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 772 (2002), quoting from *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983).

Both the plaintiff and the judge below rely on the Supreme Judicial Court's holding in *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, 428 Mass. 805 (1999) (*Mass. Eye & Ear*), to support their position that the Division's regulations are "so lacking in standards as to be arbitrary." *Id.* at 814. In *Mass. Eye & Ear*, the court held that a prior version of the presently disputed regulations did not "comport with the mandate of the Federal statute" that they implemented. *Id.* at 817.

The court in *Mass. Eye & Ear* identified three areas where the regulatory regime fell short: (1) the regulations "fail[ed] to define '[m]edical [n]ecessity' in any meaningful manner," *id.* at 813; (2) the review process improperly relied on hindsight in determining the appropriateness of a doctor's decision to admit, rather than "tak[ing] into account the physician-assessed risk to the particular patient at the time of admission," *id.* at 814-815;

and (3) the Division imposed a "severe all-or-nothing penalty on providers who render appropriate treatment in the 'wrong' setting," *id.* at 816.[8] The Court then gave two alternatives for remedying the problem:

> "The division may operate on a case-by-case basis to determine the appropriate level of care, defined in some meaningful way, and allow reimbursement at that level, provided there is adequate review of its decision. Or it may promulgate clear rules and deny all reimbursement to providers who seek reimbursement at levels not in compliance with those rules."

*Id.* at 817. A thorough review of the Division's regulations, considered in conjunction with the inpatient guidelines, note 7, *supra,* convinces us that the current regulations comply with the requirements set out by *Mass. Eye & Ear.*

As discussed, for purposes of authorizing reimbursement for inpatient services, the regulations essentially define "medical necessity" as a medically appropriate service that cannot effectively be provided in a less costly outpatient setting. In view of the specificity provided by the appropriate factors and the guidelines (see notes 5-7, *supra*), we conclude that the regulations sufficiently define "medical necessity" to allow providers to determine in what circumstances an inpatient admission is appropriate. In particular, we point to the inclusion of "Observation Services" as defined in 130 Code Mass. Regs. § 415.402 (see note 5, *supra*), and the evident thrust of the regulatory scheme favoring what might best be termed an intermediate level of care, "outpatient hospital services provided . . . in an acute inpatient hospital," affording a closer clinical observation and monitoring of patients who may need it without the need (or cost) of an inpatient admission, before resort to inpatient services. See guidelines at note 7, *supra.* This thread runs throughout the regulations and guidelines, which strike a balance between the need for medically appropriate care and the use of the least expensive setting to provide that care.

---

[8]This all-or-nothing provision has been eliminated. Under the current regulatory scheme, if a request for reimbursement for inpatient services is denied, the provider may resubmit a request for reimbursement for outpatient services. 130 Code Mass. Regs. § 450.209(C)(1), (D) (2000).

The plaintiff next asserts, and the judge concluded, that the review process improperly relies upon hindsight. This is facially incorrect. "Reviewers consider the medical-record documentation of clinical information available to the admitting provider at the time the decision to admit was made. Reviewers do not deny admissions based on what happened to the member after the admission." 130 Code Mass. Regs. § 415.414(B)(1) (2000).[9]

Unlike in *Mass. Eye & Ear*, the Division has "compl[ied] with the Federal statutory mandate to provide utilization review that 'assure[s] that payments are consistent with efficiency, economy, and quality of care.' " *Mass. Eye & Ear, supra* at 814, quoting from 42 U.S.C. § 1396a(a)(30)(A). The regulatory scheme is sufficient to meet the requirements set forth in *Mass. Eye & Ear*, and is not "arbitrary, capricious, or contrary to law" as the plaintiff suggests. *Massachusetts Hosp. Assn.* v. *Department of Pub. Welfare*, 419 Mass. at 652.

3. *Substantial evidence.* MGH asserted below that the Division's decision to deny reimbursement in each of the three cases was not supported by substantial evidence. In light of her decision on constitutional grounds, the Superior Court judge did not reach the issue. Neither party addresses the issue before us,[10] which we do not reach in the first instance on appeal. We remand this matter to the Superior Court for a determination whether there is substantial evidence to support the Division's decision in these cases.

The judgment is reversed, and the case is remanded to the

---

[9]Nor do we find any constitutional violation respecting the regulations as applied. The Division's hearing officer specifically noted in his decision that he did not "consider[] the response times of the patients in their inpatient settings." Rather, he looked at the patients' medical information as "noted in their medical records at the time the respective decisions to admit were made." Nothing in the hearing officer's decision indicates that he did otherwise. We also find no support for the plaintiff's argument that the nature of the review process makes it impossible for evaluating physicians to make unbiased evaluations once they are aware of the patients' outcomes. There is nothing in the record before us to indicate that the plaintiff has been denied due process.

[10]We do not regard the Division's bald assertion, in one line of the conclusion of its appellate brief, that its decision was supported by substantial evidence as rising to the level of appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Superior Court for further proceedings consistent with this opinion.

*So ordered.*