19-1662-cv; 19-1813-cv
*Ventura de Paulino; Navarro Carrillo v. New York City Dep't of Educ.*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 19-1662-cv

ROSA ELBA VENTURA DE PAULINO, INDIVIDUALLY AND AS
P/N/G OF R.P.,
*Plaintiff-Appellant*,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION AND
NEW YORK STATE EDUCATION DEPARTMENT
*Defendants-Appellees*,

ROBERT BRIGILIO,
*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

No. 19-1813-cv

MARIA NAVARRO CARRILLO, AS PARENT AND NATURAL GUARDIAN OF
M.G. AND INDIVIDUALLY; JOSE GARZON, AS PARENT AND NATURAL
GUARDIAN OF M.G. AND INDIVIDUALLY,
*Plaintiffs-Appellees*,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION,
*Defendant-Appellant*.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: JANUARY 28, 2020
DECIDED: MAY 18, 2020

Before: LEVAL, CABRANES, AND SACK, *Circuit Judges*.

The plaintiffs in these tandem cases, parents of students with disabilities ("Parents"), chose to withdraw their children ("Students")

---

* The Clerk of Court is directed to amend the official caption as shown above.

from one private school and to enroll them in a new private school. Shortly after, the Parents initiated administrative proceedings to challenge the adequacy of the Students' individualized educational programs ("IEPs"), written statements developed by a local committee on special education that set out, among other things, the Students' educational needs and the services that must be provided to meet those needs. The Parents sued the New York City Department of Education ("City") under the Individuals with Disabilities Education Act to obtain public funding for the new school's tuition and services during the pendency of those proceedings.

In the first case, *Ventura de Paulino v. New York City Department of Education*, No. 19-1662-cv, Plaintiff-Appellant Rosa Elba Ventura de Paulino appeals from an order denying her application for a preliminary injunction and from a final judgment entered on May 31, 2019, in the United States District Court for the Southern District of New York (George B. Daniels, *Judge*), dismissing her lawsuit. In the second case, *Navarro Carrillo v. New York City Department of Education*, No. 19-1813-cv, the City appeals from an order entered on June 13, 2019, in the United States District Court for the Southern District of New York (Colleen McMahon, *Chief Judge*), granting an application by Plaintiffs-Appellees Maria Navarro Carrillo and Jose Garzon for a preliminary injunction directing the City to pay for the new school's tuition and educational services.

Although these tandem cases come to us in different procedural postures, the question presented on appeal is the same: whether parents who unilaterally enroll their child in a new private school and

3

challenge the adequacy of the child's IEP are entitled to public funding for the new school during the pendency of the IEP dispute, on the basis that the educational program being offered at the new school is substantially similar to the program that was last agreed upon by the parents and the school district and was offered at the previous school.

On *de novo* review, we conclude that such parents are not entitled to public funding because it is the school district, not the parents, who has the authority to decide how a child's last agreed-upon educational program is to be provided at public expense during the pendency of the child's IEP dispute.

Accordingly, the May 31, 2019 judgment in favor of the City in *Ventura de Paulino* is **AFFIRMED**. And the June 13, 2019 order granting the application for preliminary injunction against the City in *Navarro Carrillo* is **VACATED,** and the cause **REMANDED** with instructions to dismiss the complaint for failure to state a claim upon which relief can be granted.

———

KARL J. ASHANTI (Peter G. Albert, *on the brief*), Brain Injury Rights Group, Ltd., New York, NY, *for Plaintiff-Appellant* in *Ventura de Paulino*, and KARL J. ASHANTI (Peter G. Albert, *on the brief*), Brain Injury Rights Group, Ltd., New York, NY, *for Plaintiffs-Appellees* in *Navarro Carrillo*.

4

ERIC LEE, Assistant Corporation Counsel (Richard Dearing and Scott Shorr, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for City Defendant-Appellee* in *Ventura de Paulino*, and ERIC LEE, Assistant Corporation Counsel (Richard Dearing and Scott Shorr, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellant* in *Navarro Carrillo*.

BLAIR J. GREENWALD, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Steven C. Wu, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, New York, NY, *for State Defendant-Appellee* in *Ventura de Paulino*.

---

JOSÉ A. CABRANES, *Circuit Judge*:

The plaintiffs in these tandem cases, parents of students with disabilities ("Parents"), chose to withdraw their children ("Students") from one private school and to enroll them in a new private school. Shortly after, the Parents initiated administrative proceedings to challenge the adequacy of the Students' individualized education

5

programs ("IEPs"), written statements developed by a local committee on special education that set out, among other things, the Students' educational needs and the services that must be provided to meet those needs.[1] The Parents also sued the New York City Department of Education ("City") under the Individuals with Disabilities Education Act ("IDEA")[2] to obtain public funding for the new school's tuition and services during the pendency of the Students' IEP disputes.

In the first case, *Ventura de Paulino v. New York City Department of Education*, No. 19-1662-cv, Plaintiff-Appellant Rosa Elba Ventura de Paulino ("Ventura de Paulino") appeals from an order denying her application for a preliminary injunction and from a final judgment entered on May 31, 2019, in the United States District Court for the Southern District of New York (George B. Daniels, *Judge*), dismissing her lawsuit. In the second case, *Navarro Carrillo v. New York City*

---

[1] More specifically, the IEP is "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (internal quotation marks and citation omitted). The State of New York "has assigned responsibility for developing appropriate IEPs to local Committees on Special Education . . ., the members of which are appointed by school boards or the trustees of school districts." *Id.* (internal quotation marks and citation omitted); *see also* N.Y. Educ. Law § 4402(1)(b)(1).

[2] 20 U.S.C. §§ 1400–1482.

*Department of Education*, No. 19-1813-cv, the City appeals from an order entered on June 13, 2019, in the United States District Court for the Southern District of New York (Colleen McMahon, *Chief Judge*), granting an application by Plaintiffs-Appellees Maria Navarro Carrillo ("Navarro Carrillo")[3] and Jose Garzon ("Garzon") for a preliminary injunction directing the City to pay for the new school's tuition and educational services.[4]

---

[3] The record reveals that the name of Plaintiff-Appellee is Maria Navarro Carrillo, not Maria Navarro Carrilo as referred to by counsel. We note that "Carrillo," unlike "Carrilo," is a common Hispanic surname. Indeed, the administrative proceedings and school enrollment documents correctly identify her surname as "Navarro Carrillo," *see, e.g.*, *Navarro Carrillo* Joint App'x at 80, 83, 89, 143. The name was changed to "Carrilo," a misspelling of her maternal surname, by her counsel when filing the complaint. The misspelled name was used throughout the litigation of her case.

[4] Because there appears to be some confusion in the briefs as to the correct surname of the Parents in these tandem cases, we take this opportunity to recall the proper usage of Hispanic names and surnames. As a general rule, according to Spanish naming conventions, Hispanics typically have two surnames. The first last name is the father's family name, and the second last name is the mother's paternal family name. A person may be "known by merely his father's name, as in English; still in all formal cases," or where the father's name is common, the mother's name is often used in addition to the father's name. MARATHON MONTROSE RAMSEY, A TEXTBOOK OF MODERN SPANISH, AS NOW WRITTEN AND SPOKEN IN CASTILE AND THE SPANISH AMERICAN REPUBLICS 678 (Rev. New York: H. Holt and Co. 1958) (Orig. Publ. 1894); *see also* Wendy Squires, *A Short Guide to Establishing a Multilingual Practice*, 50 No. 6 PRAC. LAW. 31, 33 (2004). Here, with respect to Ms. Maria Navarro Carrillo, we assume based on the record that her father's last name is "Navarro"

Although these tandem cases come to us in different procedural postures, they present the same material facts and legal issues. The Students' educational program that was last agreed upon by the City and the Parents in the end of the 2017-2018 school year listed the International Academy of Hope ("iHOPE"), a private school, as the Students' educational provider. Prior to the beginning of the 2018-2019 school year, the Parents unilaterally enrolled the Students in a new private school, the International Institute for the Brain ("iBRAIN"). On appeal, the Parents contend that the City is obligated to pay for the Students' tuition at iBRAIN because iBRAIN's educational program is substantially similar to the program that was offered at iHOPE, which the City consented to and paid for.

The question presented in these cases is one of first impression: whether under the "stay-put" provision of the IDEA parents who unilaterally enroll their child in a new private school and challenge the child's IEP are entitled to public funding for the new school during the pendency of the IEP dispute, on the basis that the educational program being offered at the new school is substantially similar to the program that was last agreed upon by the parents and the school district and was offered at the previous school. More fundamentally stated, we must determine whether the fact that the school district has authority

and her mother's paternal family name is "Carrillo." Therefore, for purposes of her legal identification, the last name of Maria Navarro Carrillo is "Navarro Carrillo," or just "Navarro." Referring to her as "Carrillo," or to the family as the "Carrillos," is incorrect.

8

to decide how the child's agreed-upon educational program is to be provided during the pendency of an IEP dispute means that the parents also have such authority.

In the circumstances presented, we conclude, on *de novo* review, that parents are not entitled to such public funding because it is generally up to the school district to determine how an agreed-upon program is to be provided during the pendency of the IEP dispute. Regardless of whether iBRAIN's educational program is substantially similar to that offered previously at iHOPE, the IDEA does not require the City to fund the Students' program at iBRAIN during the pendency of their IEP dispute; when the Parents unilaterally enrolled the Students at iBRAIN, the Parents did so at their own financial risk.

Accordingly, in *Ventura de Paulino*, we **AFFIRM** the May 31, 2019 judgment of the District Court in favor of the defendant school system; in *Navarro Carrillo*, we **VACATE** the District Court's June 13, 2019 order granting the application for a preliminary injunction against the school system and **REMAND** the cause with instructions to dismiss the complaint for failure to state a claim upon which relief can be granted.[5]

---

[5] A third case presenting the same legal question, *see Mendez v. New York City Department of Education*, No. 19-1852-cv, was argued before this Court on the same day, January 28, 2020, along with these tandem cases. We have disposed of

# I.   BACKGROUND

## A. The IDEA's Legal Framework

The IDEA authorizes the disbursement of federal funds to States[6] that develop appropriate plans to, among other things, provide a free and appropriate public education ("FAPE") to children with disabilities.[7] To provide a FAPE to each student with a disability, a school district must develop an IEP that is "reasonably calculated to enable the child to receive educational benefits."[8] The IEP must identify the student's "particular educational needs . . . and the services required to meet those needs."[9]

---

the appeal in *Mendez* by summary order filed simultaneously herewith, in which we dismiss the case for lack of appellate jurisdiction. Of course, upon the issuance of the mandate in *Ventura de Paulino* and *Navarro Carrillo*, our analysis in this opinion will bind the District Court in *Mendez*.

[6] "The term 'State' [in the IDEA] means each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying areas." 20 U.S.C. § 1401(31).

[7] *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295 (2006); *see also* 20 U.S.C. § 1412(a)(1)(A).

[8] *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

[9] *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998).

The IDEA also requires participating States to develop an administrative review process for parents who are dissatisfied with their child's education and wish to challenge the adequacy of the child's IEP.[10] To that effect, the State of New York "has implemented a 'two-tier system of administrative review.'"[11] In the first tier, a parent can file an administrative "due process complaint" challenging the IEP and requesting a hearing before an impartial hearing officer.[12] The party aggrieved by the hearing officer's decision may then "proceed to the second tier, 'an appeal before a state review officer.'"[13] Once the state review officer makes a final decision, the aggrieved party may seek judicial review of that decision in a state or federal trial court.[14]

At the crux of these cases is a provision in the IDEA known as the "pendency" or "stay-put" provision.[15] It provides that, while the

---

[10] 20 U.S.C. § 1415(b)(6)–(8).

[11] *Mackey ex rel. Thomas M. v. Bd. of Educ. for the Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir. 2004) (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002)).

[12] *Id.* (citing N.Y. Educ. Law § 4404(1); 20 U.S.C. § 1415(f)).

[13] *Id.* (quoting *Murphy*, 297 F.3d at 197) (citing N.Y. Educ. Law § 4404(2); 20 U.S.C. § 1415(g)).

[14] *See id.* (citing 20 U.S.C. § 1415(i)(2)).

[15] *See* 20 U.S.C. § 1415(j).

administrative and judicial proceedings are pending and "unless the school district and the parents agree otherwise," a child must remain, at public expense, "in his or her then-current educational placement."[16] The term "educational placement" refers "only to the general type of educational program in which the child is placed"[17]— *i.e.*, "the classes, individualized attention and additional services a child will receive."[18]

Parents who are dissatisfied with their child's education can "unilaterally change their child's placement during the pendency of review proceedings"[19] and can, for example, "pay for private services, including private schooling."[20] They "do so," however, "at their own

---

[16] *Mackey*, 386 F.3d at 160 (citing 20 U.S.C. § 1415(j)). The IDEA's implementing regulations under federal law, *see* 34 C.F.R. § 300.514(a) ("Child's status during proceedings"), and New York state law, *see* N.Y. Educ. L. § 4404(4)(a), impose the same requirement.

[17] *Concerned Parents v. N.Y. City Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980).

[18] *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009).

[19] *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985) ("*Burlington*"); *see also Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) ("*Carter*").

[20] *T.M.*, 752 F.3d at 152 (citations omitted); *see also R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).

financial risk."[21] They can obtain retroactive reimbursement from the school district *after* the IEP dispute is resolved, if they satisfy a three-part test that has come to be known as the *Burlington-Carter* test.[22] A parent can obtain such reimbursement if: "(1) the school district's proposed placement violated the IDEA" by, for example, denying a FAPE to the student because the IEP was inadequate; (2)"the parents' alternative private placement was appropriate"; and (3) "equitable considerations favor reimbursement."[23]

## B. The Parties' Relationship and Administrative Proceedings

Ventura de Paulino is the mother of R.P., and Navarro Carrillo and Garzon are the parents of M.G. Both Students, R.P. and M.G., are minors with disabilities stemming from acquired brain injuries, who are entitled to a FAPE under the IDEA. During the 2017-2018 academic year, the Students were unilaterally enrolled by the Parents at iHOPE, a private school. The Parents filed due process complaints alleging that the Students' IEPs proposed by the local committee on special education for that school year was inadequate and that iHOPE's IEP was appropriate for the Students.

In both instances—in June 2018 in the case of R.P., and in April 2018 in the case of M.G.—impartial hearing officers determined that:

---

[21] *Burlington*, 471 U.S. at 374.

[22] *E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 451 (2d Cir. 2014).

[23] *T.M.*, 752 F.3d at 152 (citations omitted); *see also E.M.*, 758 F.3d at 451.

(1) the City had failed to provide the Students with a FAPE in violation of the IDEA; (2) the Parents' alternative placement at iHOPE for the 2017-2018 school year was appropriate; and (3) equitable considerations favored reimbursement to the Parents. The impartial hearing officers ordered the City to reimburse the Parents for the expenses incurred at iHOPE during the 2017-2018 school year and ordered the local committee on special education to draft a new IEP that incorporates all the items of iHOPE's IEP. The City did not appeal.

Following the reimbursement orders, in or around June 2018, the Parents unilaterally enrolled the Students at iBRAIN, a newly created private school, for the 2018-2019 school year. On July 9, 2018, the Students' first day at iBRAIN, the Parents filed a due process complaint alleging that the City continued to fail to provide the Students with a FAPE for the new school year. In that complaint, the Parents asked for an order pursuant to the IDEA's stay-put provision directing the City to fund the Students' placement at iBRAIN during the pendency of the proceedings.

On November 22, 2018, the impartial hearing officer in R.P.'s proceeding denied the request for a pendency order and concluded that, consistent with the June 2018 administrative order that the City did not appeal, iHOPE was R.P.'s pendency placement. Although Ventura de Paulino quickly appealed the interim decision to a state review officer, she did not wait for a final decision and filed a complaint in the district court.

14

On March 5, 2019, the impartial hearing officer in M.G.'s proceeding denied the request for a pendency order on the basis that iBRAIN and iHOPE were not substantially similar and that M.G.'s pendency placement remained at iHOPE. Navarro Carrillo and Garzon did not appeal the interim decision to a state review officer. Instead, they too filed their own complaint in the district court.

## C. District Court Proceedings

On January 9, 2019, Ventura de Paulino filed her complaint seeking, among other things, a preliminary injunction requiring the City to pay for R.P.'s iBRAIN tuition and services. On March 20, 2019, the District Court rejected the City's argument that Ventura de Paulino was required to exhaust New York's two-tier review process, but denied her application for emergency relief.[24] On May 31, 2019, the District Court granted the City's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, as well as the

---

[24] *See Ventura de Paulino v. N.Y. City Dep't* of Educ., No. 19-cv-222 (GBD), 2019 WL 1448088, at *1, 5–7 (S.D.N.Y. Mar. 20, 2019), *reconsideration denied sub nom. Ventura De Paulino v. N.Y. City Dep't of Educ.*, No. 19-cv-222 (GBD), 2019 WL 2498206 (S.D.N.Y. May 31, 2019).

15

motion to dismiss by co-defendant State of New York.[25] Final judgment dismissing the case was entered on the same day.[26]

On April 2, 2019, Navarro Carrillo and Garzon filed their complaint seeking the exact same remedy sought by Ventura de Paulino. On June 13, 2019, after concluding that iHOPE and iBRAIN were substantially similar, the District Court granted the requested preliminary injunction and vacated the March 2019 Interim Order by the impartial hearing officer in M.G.'s proceeding.[27] The District Court ordered the City to pay for M.G.'s education at iBRAIN during the pendency of M.G.'s FAPE proceeding.[28]

These appeals followed. In *Navarro Carrillo*, the District Court granted the City's motion to stay the order of preliminary injunction pending the City's interlocutory appeal.

---

[25] *See Ventura De Paulino v. N.Y. City Dep't of Educ.*, No. 19-cv-222 (GBD), 2019 WL 2499204, at *1–3 (S.D.N.Y. May 31, 2019).

[26] On appeal, Ventura de Paulino's reply brief belatedly objects to the dismissal of the State of New York, but her failure to raise the objection in her opening brief waived any challenge to the District Court's dismissal. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007). In any event, any such challenge to the dismissal would be meritless, since Ventura de Paulino's complaint does not plausibly allege any claims against the State of New York, or even seek any relief from it.

[27] *Navarro Carrilo v. N.Y. City Dep't of Educ.*, 384 F. Supp. 3d 441, 459–65 (S.D.N.Y. 2019).

[28] *Id.* at 465.

## D. Unfamiliar Litigation and a Curious Set of Facts

Before proceeding to analyze the Parents' claims, we would be remiss not to emphasize the somewhat unusual set of facts presented in these tandem cases, which in turn have given rise to an unfamiliar pattern of IDEA litigation. To our knowledge, these tandem cases are just two of approximately 23 cases presenting similar, if not virtually identical, legal questions in our Court and in the Southern District of New York. In these cases, the parents or natural guardians of the students with disabilities transferred their children from iHOPE to iBRAIN for the 2018-2019 school year without the City's consent and are now claiming that they are entitled to an order requiring the City to pay for the educational services at iBRAIN on a pendency basis. The vast majority, if not all, of these plaintiffs are represented by the Parents' counsel in these tandem cases.

The arguably unusual circumstances surrounding the mass exodus of students from iHOPE to iBRAIN were thoroughly described by Judge Jesse M. Furman of the Southern District of New York in one of the many iHOPE-to-iBRAIN-pendency cases.[29] It has been alleged

---

[29] While tangential to our disposition of the Parents' legal claims, we rely on Judge Furman's summary as an interesting backdrop for our analysis set forth below. *See Ferreira v. N.Y. City Dep't of Educ.*, No. 19-cv-2937 (JMF), 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020) (denying the parent's motion for summary

that, during the summer of 2018, there was a "'split between the original founders and some of the [iHOPE] board' over whether [iHOPE] should admit students with disabilities besides traumatic brain injuries,"[30] and that "'the original founders and some of the administration w[ere] ousted' from [iHOPE]."[31] Donohue left iHOPE and became the founder and registered agent of iBRAIN.[32] Donohue also happens to be the founder of the Brain Injury Rights Group,[33] the law firm representing the Parents in these tandem cases and the other plaintiffs seeking public funding from the City for iBRAIN's tuition and related services.

---

judgment and application for preliminary injunction, and granting the City's cross-motion for summary judgment), *appeal filed* No. 20-908-cv (2d Cir. Mar. 13, 2020).

[30] *Id.* (quoting *Fiallos v. N.Y. City Dep't of Educ.*, No. 19-cv-334 (JGK) (S.D.N.Y. Sept. 16, 2019), ECF No. 59, at 6-7, *appeal filed* No. 19-1330-cv (2d Cir. May 3, 2019)).

[31] *Id.* (quoting *Mendez v. N.Y. City Dep't of Educ.*, No. 19-CV-2945 (DAB) (S.D.N.Y. Sept. 20, 2019), ECF No. 27, at 6-7, 17, *appeal filed* No. 19-1852-cv (2d Cir. June 24, 2019)).

[32] *Id.* (quoting *Navarro Carrilo*, 384 F. Supp. 3d at 447, 450 (alteration omitted)) (citing Docket No. 19-cv-2937, ECF No. 33, at 11 & n.9, 169).

[33] *Id.* (citing *Donohue v. N.Y. City Dep't of Educ.*, No. 18-CV-9364 (DAB) (S.D.N.Y. Oct. 18, 2018), ECF No. 7, ¶ 8; *id.* ECF No. 34, at 2).

## II.    DISCUSSION

### A. Standard of Review

We review a district court's grant of a motion to dismiss a complaint *de novo*, "credit[ing] all non-conclusory factual allegations in the complaint and draw[ing] all reasonable inferences in [the plaintiffs'] favor,"[34] to determine "whether such allegations and inferences plausibly indicate [the plaintiffs'] entitlement to relief."[35] Similarly, "questions of law decided in connection with requests for preliminary injunctions . . . receive the same *de novo* review that is appropriate for issues of law generally."[36]

Ordinarily, to obtain a preliminary injunction, the movant has to "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary

---

[34] *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

[35] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)).

[36] *Am. Express Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998).

relief."[37] But where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved.[38]

Because we conclude on *de novo* review that the Parents' complaints fail to state a claim upon which relief can be granted, we need not decide what standard applies to the Parents' request for preliminary injunctive relief.[39]

---

[37] *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

[38] *See Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) (stating that the stay-put provision "is, in effect, an automatic preliminary injunction" that "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships"); *see also Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships.").

[39] Our conclusion that the Parents' complaints fail to state a claim is based on our review of the final judgment in *Ventura de Paulino*. Because the Parents' complaints are virtually identical in all material respects, our affirmance of the dismissal of Ventura de Paulino's complaint necessarily means that Navarro Carrillo and Garzon cannot succeed on the merits of their pendency claim and that the District Court's order of preliminary injunction in their favor must be vacated.

## B. Exhaustion of Administrative Remedies

The IDEA requires that any available administrative remedies be exhausted before a lawsuit is filed in federal court.[40] There are, however, some exceptions to the IDEA's exhaustion requirement.[41] We have stated in the past that, unless an exception applies, the exhaustion of administrative remedies under the IDEA is a "jurisdictional prerequisite"[42] of the statute and that a "plaintiff's failure to exhaust . . . deprives a court of subject matter jurisdiction" over any IDEA claims.[43] Although we have questioned more recently the supposed jurisdictional nature of the exhaustion requirement,[44]

---

[40] *See* 20 U.S.C. § 1415(i)(2)(A) (providing a cause of action in federal or state court to any party "aggrieved" by a "final" decision of either an impartial hearing officer, if the state does not have an appeals process, or the state review officer, if it does); *accord J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004).

[41] "[E]xhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy*, 297 F.3d at 199 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987)).

[42] *Id.*

[43] *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002).

[44] In *Coleman v. Newburgh Enlarged City School District*, we noted that our precedent has not been entirely clear on whether the IDEA's exhaustion requirement is a jurisdictional prerequisite or a mandatory claim-processing rule.

because we are arguably bound by those earlier statements and because, in all but the rarest of cases, we "must determine that [we] have jurisdiction before proceeding to the merits" of a claim,[45] we first consider the City's argument that dismissal is appropriate because the Parents failed to exhaust their administrative remedies.

The City contends that the Parents were required to wait for a ruling by a state review officer before filing their complaints in federal court. But that argument ignores the fact that where "an action alleg[es a] violation of the stay-put provision," such action "falls within one, if not more, of the enumerated exceptions" to the IDEA's exhaustion

---

503 F.3d 198, 203 (2d Cir. 2007); *accord Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 444 n.2 (2d Cir. 2006). Unlike a jurisdictional prerequisite, the affirmative defense that a party has failed to satisfy a mandatory claim-processing rule is subject to the doctrines of waiver and forfeiture. *See Coleman*, 503 F.3d at 203. Like in *Coleman*, however, "we are not forced to decide whether our precedent [in *Polera* and *Murphy*], which labels the IDEA's exhaustion requirement as a rule affecting subject matter jurisdiction rather than an 'inflexible claim-processing' rule that may be waived or forfeited, remains good law . . . because there can be no claim of waiver or forfeiture here." *Id.* at 204.

[45] *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *but see Ctr. for Reprod. Law and Policy v. Bush*, 304 F.3d 183, 195 (2d Cir. 2002) (recognizing a discretionary exception to *Steel Co.* on the basis that a court, in very rare circumstances, "may dispose of the case on the merits without addressing a novel question of jurisdiction").

requirement.[46] That is clearly the case here. The Parents' complaints allege that the City's failure to pay for the Students' services at iBRAIN violates the stay-put provision of the IDEA.

The City also contends that the Parents cannot rely on the stay-put provision to circumvent the IDEA's exhaustion requirement because the City has not violated the stay-put provision. That argument also fails, as it conflates the merits inquiry of whether the Parents have stated a claim upon which relief can be granted with the arguable threshold inquiry of whether the Parents needed to exhaust their administrative remedies. Because the Parents allege that the City's failure to pay for the Students' services at iBRAIN violates the stay-put provision of the IDEA, the Parents are not required to satisfy the IDEA's exhaustion requirement.

## C. The IDEA's Stay-Put Provision

The IDEA's stay-put provision provides in relevant part that "during the pendency of any [administrative and judicial] proceedings conducted pursuant to this section, unless the [school district] . . . and

---

[46] *Murphy*, 297 F.3d at 199; *accord Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015). As we explained in *Murphy*, "given the time-sensitive nature of the IDEA's stay-put provision," and the amount of time it would take a plaintiff to exhaust the administrative process, "an immediate appeal is necessary to give realistic protection to the claimed right." 297 F.3d at 199 (citation and quotation marks omitted).

the parents otherwise agree, the child shall remain in the then-current educational placement of the child."[47] We have interpreted this provision to require a school district "to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete."[48] To that effect, although we may not have previously stated the proposition clearly, the IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stay-put provision (*i.e.*, pendency services).[49] As reflected in the text of the provision and our cases, Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the

---

[47] 20 U.S.C. § 1415(j).

[48] *T.M.*, 752 F.3d at 171 (citing *Mackey*, 386 F.3d at 163).

[49] *See Mackey*, 386 F.3d at 160–61, 165–66 (explaining that school districts are required to pay for a child's pendency placement regardless of who prevails in the IEP dispute and authorizing an award for pendency services even after parents lost their IEP dispute for the relevant school year). District courts in this Circuit also have noted repeatedly that "a school district has no right under the [IDEA] to recoup pendency tuition payment from a parent." *N.Y. City Dep't of Educ. v. S.S.*, No. 09-cv-810 (CM), 2010 WL 983719, at *9 (S.D.N.Y. March 17, 2010); *see, e.g., N.Y. City Dep't of Educ. v. V.S.*, No. 10-cv-05120 (JG)(JO), 2011 WL 3273922, at *9 (E.D.N.Y. July 29, 2011); *E. Z.-L. ex rel. R.L. v. N.Y. City Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011); *C.G. ex rel. B.G. v. N.Y. City Dep't of Educ.*, 752 F. Supp. 2d 355, 361 (S.D.N.Y. 2010); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 367 n.9 (S.D.N.Y. 2000).

pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings.[50]

Where, as here, the stay-put provision is invoked, our inquiry generally focuses on identifying the child's "then-current educational placement," as it is the only educational program the school district is obligated to pay for during the pendency of an IEP dispute.[51] The term "*then-current* educational placement" in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP.[52] Under the IDEA, an initial placement is made by the school district upon the consent of the parent.[53] A child's educational placement (or program) may be changed if, for example, the school district and the parents agree on what the new placement should be. The placement can also be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate

---

[50] *See Mackey*, 386 F.3d at 160–61; *see also Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996), *cited with approval in Mackey*, 386 F.3d at 161.

[51] *See Mackey*, 386 F.3d at 163; *Zvi D.*, 694 F.2d at 906.

[52] *See, e.g.*, *T.M.*, 752 F.3d at 171; *Mackey*, 386 F.3d at 163; *Zvi D.*, 694 F.2d at 906.

[53] 20 U.S.C. § 1415(j) ("[I]f applying for initial admission to a public school, [the child] shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.").

by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision.[54] Accordingly, implicit in the concept of "educational placement" in the stay-put provision (*i.e.*, a pendency placement) is the idea that the parents and the school district must agree either expressly or as impliedly by law to a child's educational program.

When the impartial hearing officers in these tandem cases concluded that iHOPE was an appropriate placement for the Students and the City chose not to appeal the ruling to a state review officer, the City consented, by operation of law, to the Students' private placement at iHOPE. At that moment, the City assumed the legal responsibility to pay for iHOPE's educational services to the Students as the agreed-upon educational program that must be provided and funded during the pendency of any IEP dispute. What is in dispute here, however, is whether the stay-put provision requires the City to pay for the educational services being provided to the Students at the new school, iBRAIN.

The stay-put provision does not guarantee a child with a disability "the right to remain in the exact same school with the exact

---

[54] *See Mackey*, 386 F.3d at 163; *see also Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) ("[O]nce the parents' challenge [to a proposed IEP] succeeds . . ., consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district.").

same service providers while his administrative and judicial proceedings are pending. Instead, it guarantees only the same general level and type of services that the . . . child was receiving."[55]

With this in mind, the Parents first argue that, because the educational program offered at iBRAIN is arguably substantially similar to that offered at iHOPE, the decision of the Parents to move the Students to iBRAIN did not change the placement for which the City is required to pay. In the alternative, the Parents argue that the Students' operative placement is at iBRAIN, since that is where the Students were enrolled at the time that the Parents initiated the administrative proceedings challenging the Students' IEPs for the 2018-2019 school year.

The Parents' arguments focus on identifying the pendency placement that the Students are entitled to receive—the inquiry that, as stated above, typically underlies most pendency disputes. The parties' dispute requires us, however, to answer a different question: Does the fact that the City retains authority to determine how the Students' pendency services are to be provided mean that the Parents may also exercise that authority?

---

[55] *T.M.*, 752 F.3d at 171 (citing *Concerned Parents*, 629 F.2d at 753, 756).

### 1. The Parents' Primary Argument

The Parents' argument that the Students' new enrollment at iBRAIN did not constitute a change in the Students' pendency placement is misplaced. In *Concerned Parents v. New York City Board of Education*, we concluded, albeit in a different context, that the City's transfer of children with disabilities in special education classes at one school to substantially similar classes at other schools within the same school district did not result in a change to the students' educational placement.[56] That conclusion, however, offers no solace to the Parents' pendency claims here.

Underlying the Parents' primary argument is the assumption that because a school district can move a child to a new school that offers the same general level and type of services without violating the IDEA's stay-put provision, a parent is likewise authorized to invoke the stay-put provision to require the school district to pay for a new school identified by the parent so long as the new school offers substantially similar educational services. Not so.

---

[56] *See Concerned Parents*, 629 F.2d at 756 (rejecting claim that there had been a change in the children's educational placement that triggered prior notice and hearing requirements).

For the reasons stated below, it is the City, not the Parents, that is authorized to decide how (and where) the Students' pendency services are to be provided.

### a. First Reason: The IDEA's Text and Structure

We start by recognizing the well-settled principle that "[b]y and large, public education in our Nation is committed to the control of the state and local authorities."[57] By choosing to accept federal funds under the IDEA, participating States do not relinquish their control over public education, including their authority to determine the educational programs of students.[58] Nor do States agree to the wholesale transfer of that authority to the parents of children with disabilities. Rather, by accepting federal funds, States primarily agree to establish procedures to ensure that a FAPE is provided to children

---

[57] *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).

[58] *See Tilton v. Jefferson Cty. Bd. of Educ.*, 705 F.2d 800, 804 (6th Cir. 1983) ("Congress did not compel, as the price for federal participation in the education for the handicapped, a wholesale transfer of authority over the allocation of educational resources from the duly elected or appointed state and local boards to the parents of individual handicapped children."), *cited with approval in Fallis v. Ambach*, 710 F.2d 49, 56 (2d Cir. 1983).

with disabilities.[59] One of those "procedural safeguards"[60] is the right to pendency services under the stay-put provision.[61]

The stay-put provision therefore was enacted as a procedural safeguard in light of the school district's broad authority to determine the educational program of its students. The provision limits that authority by, among other things, preventing the school district from unilaterally modifying a student's educational program during the pendency of an IEP dispute. It does not eliminate, however, the school district's preexisting and independent authority to determine *how* to provide the most-recently-agreed-upon educational program. As we have recognized, "[i]t is up to the school district," not the parent, "to decide how to provide that educational program [until the IEP dispute is resolved], so long as the decision is made in good faith."[62]

If a parent disagrees with a school district's decision on how to provide a child's educational program, the parent has at least three options under the IDEA: (1) The parent can argue that the school

---

[59] 20 U.S.C. § 1415(a) ("Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.").

[60] *Id.* § 1415 (entitled, "Procedural Safeguards").

[61] *See id.* § 1415(j).

[62] *T.M.*, 752 F.3d at 171 (citing *Concerned Parents*, 629 F.2d at 756).

district's decision unilaterally modifies the student's pendency placement and the parent could invoke the stay-put provision to prevent the school district from doing so; (2) The parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) The parent can determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved.

That said, what the parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis. To hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services should be provided.

Here, the Parents' pendency claims seek to do exactly that. The Parents and the City had agreed that the Students' educational program would be provided at iHOPE. When apparently dissatisfied with unspecified changes to iHOPE's "management" and "philosophy," the Parents unilaterally decided that iBRAIN was a

better school for the Students.[63] The Parents are certainly entitled to make that decision for the benefit of their children, but in claiming that the City must continue to pay for iBRAIN's services on a pendency basis, the Parents effectively "seek a 'veto' over school choice rather than 'input'—a power the IDEA clearly does not grant them."[64] Regardless of whether the educational program that the Students are receiving at iBRAIN is substantially similar to the one offered at iHOPE, when the Parents unilaterally enrolled the Students at iBRAIN for the 2018-2019 school year, they did so at their own financial risk.[65]

---

[63] At oral argument, counsel for the Parents generally attributed the exodus of students from iHOPE to iBRAIN to "changes in the management" and "philosophy" of iHOPE.

[64] *T.Y.*, 584 F.3d at 420.

[65] We do not consider here, much less resolve, any question presented where the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child. Those circumstances are not present here. We note, however, that at least one of our sister Circuits has acknowledged that, under certain extraordinary circumstances not presented here, a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii). *See Wagner v. Bd. of Educ. of Montgomery Cty.*, 335 F.3d 297, 302–03 (4th Cir. 2003) (involving a situation in which the pendency placement was no longer available, and the school district had failed to propose an alternative, equivalent placement).

### b. Second Reason: Cost of Pendency Services

As a practical matter, it makes sense that it is the party generally responsible for paying a student's agreed-upon educational program—here, the City—who determines how the pendency services are to be provided. That is so for two reasons: (i) public funding for pendency services can never be recouped; and (ii) the cost of educational services in schools can vary dramatically.

### i. Recoupment versus reimbursement

One can imagine circumstances in which a school district pays on a pendency basis for the educational services of a private school selected unilaterally by the parents, after which a court decides in the school district's favor, by holding that the parents' unilateral transfer modified the child's pendency placement, or that the school district's proposed IEP would have afforded the child a FAPE.[66] In these circumstances, the school district would have no recourse under the

---

[66] *Cf. S.S.*, 2010 WL 983719, at *1 (rejecting claim by the City that it is entitled to be reimbursed for the payments made "to advance the child['s] . . . private school tuition during hearing and appeal process" pursuant to the stay-put provision in light of the state review officer's final decision that the IEP "proposed for the child would have afforded him a" FAPE for the relevant school year).

IDEA to recoup the sums it expended on the child.[67] By contrast, if the school district were found to have unilaterally modified the child's placement, the parent could seek injunctive relief against the school district for violating the IDEA.[68]

### ii. Difference in educational costs

Dramatically different costs may be presented when parents unilaterally choose to enroll their child in a new school. Indeed, the cost of providing pendency services in the new school may be substantially higher than the cost of providing those services at the previous school.[69] Nothing in the statutory text or legislative history

---

[67] *See ante*, note 49. This did not happen here *only* because the District Court in *Navarro Carrillo* granted the City's motion to stay the order granting the application for a preliminary injunction.

[68] *Cf. T.M.*, 752 F.3d at 172 (authorizing limited reimbursement to parents in light of, among other things, the fact that the school district refused to provide the child pendency services in the first instance); *Mackey*, 386 F.3d at 165–66 (authorizing reimbursement for pendency services even after parents lost their IEP dispute for the relevant school year).

[69] In these cases, neither the City nor the Parents presented any evidence in the record about the cost of iBRAIN's services and how they compare to the cost of similar services at iHOPE. At oral argument, however, counsel for the City informed us, without contradiction, that the cost of attending iBRAIN was significantly higher, and that the Parents had disavowed the City's transportation arrangement at iHOPE in favor of a private transportation service arranged by iBRAIN.

of the IDEA, however, "implies a legislative intent to permit" the parents of children with disabilities "to utilize the [stay-put provision's] automatic injunctive procedure . . . to frustrate the fiscal policies of participating states."[70]

### c. Third Reason: Uncertainty of Litigation

The Parents' pendency claims seek to upend the educational status quo that the stay-put provision was enacted to protect. Under the Parents' theory, litigation at the outset of an IEP dispute seems inevitable. The parties will need to rush to court to obtain a ruling on an emergency basis on whether the new school selected by the parent offers a program that is substantially similar to the program offered at the prior agreed-upon school. A provision that guarantees the right of a child to *stay put* can hardly justify the uncertainty inherent in a race to the courthouse.

### 2. The Parents' Alternative Argument

The Parents also argue that the City must pay for iBRAIN's services on a pendency basis because it is the Students' "operative placement" at the time when the IEP proceedings were initiated. That argument fails for all of the reasons stated above. A parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a

---

[70] *Fallis*, 710 F.2d at 56 (quoting *Tilton*, 705 F.2d at 804).

pendency basis. That argument effectively renders the stay-put provision meaningless by denying any interest of a school district in resolving how the student's agreed-upon educational program must be provided and funded.

It bears recalling that the term "operative placement" has its origin in cases where the school district attempts to move the child to a new school without the parents' consent,[71] or where there is no previously implemented IEP so that the current placement provided by the school district is considered to be the pendency placement for purposes of the stay-put provision.[72] Neither circumstance is presented here.

*        *        *

Although the stay-put provision prevents a school district from modifying a student's pendency placement without the parents' consent, it does not prohibit the school district from determining how, and where, a student's pendency placement should be provided. The Parents and the City had agreed that the Students' pendency placement should be provided at iHOPE. When the Parents enrolled the Students at iBRAIN, they did so at their own financial risk; the Parents cannot determine unilaterally how the Students' educational

---

[71] *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996), *cited with approval in Mackey*, 386 F.3d at 163.

[72] *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625–26 (6th Cir. 1990).

program is to be provided at the City's expense. The Parents having failed to plausibly allege a violation of the stay-put provision and an entitlement to a pendency order requiring the City to pay for iBRAIN's services, they may obtain retroactive reimbursement for their expenses at iBRAIN only if they are able to satisfy the three-factor *Burlington-Carter* test after their IEP disputes are resolved. That question, if ever presented, is one that we leave for another day.

## III. CONCLUSION

To summarize, we conclude that:

(1) An action that alleges a violation of the stay-put provision falls within one or more of the exceptions to the exhaustion-of-administrative-remedies requirement of the Individuals with Disabilities Education Act ("IDEA").

(2) Because the Parents' complaints allege that the City's failure to pay for the Students' educational services at the International Institute for the Brain ("iBRAIN") violates the IDEA's stay-put provision, the Parents were not required to exhaust their administrative remedies.

(3) The stay-put provision of the IDEA, which was enacted to limit a school district's broad authority to determine or modify a child's educational program without the parent's consent, does not eliminate the school district's authority to determine how, and where, a student's agreed-upon educational program is to be provided at public expense

during the pendency of a parental challenge to the student's individualized education program ("IEP") dispute.

(4) The fact that the City retains authority to determine how and where the Students' most-recently-agreed-upon educational program is to be provided during the pendency of the Students' IEP disputes does not mean that the Parents may exercise similar authority. The Parents are not entitled to receive public funding under the stay-put provision for a new school on the basis of its purported substantial similarity to the last agreed-upon placement.

(5) Accordingly, regardless of whether iBRAIN provided the Students' last agreed-upon educational program in a manner substantially similar to iHOPE, when the Parents unilaterally enrolled the Students at iBRAIN, the Parents did so at their own financial risk.

For the foregoing reasons, the District Court's May 31, 2019 judgment in *Ventura de Paulino* is **AFFIRMED**; the District Court's June 13, 2019 order granting the application for preliminary injunction in *Navarro Carrillo* is **VACATED** and the cause in *Navarro Carrillo* is **REMANDED** with instructions to dismiss the complaint for failure to state a claim upon which relief can be granted.